CLARA J. BOGART, as Administratrix, etc., of HOYT M. BOGART, Deceased, Respondent, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant.

*Negligence — death of a railroad employee caused by the washing away of a railroad bridge in a storm — structural defects — requests to charge — contradiction of a witness.*

On the trial of an action brought against a railroad company operating, as lessee, a railroad built by another company, to recover, on the ground of its negligence, the damages resulting from the death of a fireman in the defendant's employ, it appeared that the death was caused by the locomotive plunging into a stream where the bridge had been washed away in a heavy storm raging at the time; it was claimed by the plaintiff that, while the defendant was not liable for defects in the original construction of the bridge, it was liable if such defects existed and were or could have been ascertained by the defendant by proper inspection after it entered into possession of the road under its lease. Evidence upon this contention was given on both sides.

The defendant requested the court to charge that, "If under the evidence the jury shall find that the cause of this accident was this extraordinary flow of water, in some way causing the destruction of the south abutment, that the plaintiff is not entitled to recover."

The court refused the request.

*Held,* that, upon the theory upon which the case was tried and submitted, the request was proper and should have been charged, unless it was a mere repetition of what the court had already charged.

It was conceded that the court had in substance charged the matter embraced in the request refused, but the defendant claimed that in a subsequent portion of the charge the court inconsistently left it to the jury to determine whether there was an apparent structural weakness in the south abutment which ought to have been discovered by the defendant before the accident, and that there was, in fact, no evidence of any structural weakness in the south abutment.

*Held,* that the charge was not faulty in that respect, it appearing that the consideration by the jury of the subject of structural weakness was limited to the north abutment, and that they were plainly instructed that there was no evidence tending to show that there was any reason to suspect that the south abutment was not properly constructed.

An error in admitting testimony to contradict a witness in reference to a statement alleged to have been made by him to others, without his attention having been sufficiently called to the time and place and persons to whom or in whose presence the alleged statement was made, may be cured and rendered harmless by a charge which removes the subject-matter of the witness' evidence from the consideration of the jury.

APPEAL by the defendant, the Delaware, Lackawanna and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Livingston county on the 18th day of December, 1890, upon a verdict rendered at the Livingston Circuit, and from an order entered in said clerk's office on the 18th day of December, 1890, denying the defendant's motion for a new trial made upon the minutes, and from an order entered in said clerk's office on the 9th day of December, 1890, denying the defendant's motion to set aside the verdict on the ground of irregularity.

*John G. Milburn,* for the appellant.

*E. F. Babcock,* for the respondent.

HAIGHT, J.:

This action was brought to recover the damages sustained in consequence of the death of Hoyt M. Bogart, plaintiff's intestate, caused by the alleged negligence of the defendant.

The deceased was a fireman on one of the passenger trains of defendant. On the night of July 5, 1888, the engine upon which he was working plunged into McKercher creek and he was killed. A heavy storm was raging at the time, and the railroad bridge span-

ning the creek had been washed away, including all of the south abutment and a good portion of the north abutment. The railroad, including the bridge, was originally built and is owned by the New York, Lackawanna and Western Railway Company. In 1882 it was leased to the defendant, by whom it has since been operated. It is not claimed that the defendant is liable for defects in the original construction of the bridge, but is liable if such original defects existed in its construction, and were or could have been ascertained by the defendant by proper inspection after it had entered into possession under its lease.

Upon the trial it was claimed on behalf of the plaintiff that the foundation of the abutment was laid on a wet bottom containing quicksand; that instead of being laid by courses of masonry, field and cobble stones were thrown in as backing, and that the mortar used was worthless; that in 1887 a portion of the north abutment had settled so that a crack appeared, and during a freshet several of the stones were washed out, and that at that time the structural defects of the abutment were apparent. It was then repaired, but in the following October another crack appeared. Evidence upon this contention was given *pro* and *con.*

In submitting the case to the jury the defendant's counsel asked the court to charge that " If under the evidence the jury shall find that the cause of this accident was this extraordinary flow of water, in some way causing the destruction of the south abutment, that the plaintiff is not entitled to recover." The court refused to so charge, and to such refusal the defendant's counsel took an exception. Upon the theory upon which the case was tried and submitted by the court, the request was proper and should have been charged, unless it was a mere repetition of that which the court had already charged.

It is conceded that the court had in substance charged the matter embraced in the request, but it is claimed that in a subsequent portion of the charge the court had left it to the jury to determine whether there was an apparent structural weakness in the south abutment which ought to have been discovered by the defendant before the accident. We think, however, that the charge of the court is not faulty in this respect. The judge in his charge, after giving general instructions as to the duty of railroad corporations in the maintenance and inspection of their bridges, proceeds to state

that, " There is not any claim on the part of anybody· that when
these abutments were turned over to the defendant there was any
outward sign of weakness about them, or that there was anything
which should immediately put the defendant upon notice that the
abutments were not properly built.   The defendant, unless there
was some outward sign of weakness about them, had a right to rely
upon their being properly constructed and was not chargeable with
any of the faults of the original construction, and although they may
have been improperly constructed yet the plaintiff cannot recover
in this action unless you shall come to the conclusion that the defend-
ant might have discovered the imperfect construction by a proper
system of inspection and failed so to do.   *There is no evidence what-
ever directly bearing upon the south abutment which tends to show
there was any reason to suspect that it was not properly con-
structed, that is, there was nothing in the abutment itself or any
of the indications surrounding it which showed or which would
give any careful man reason to suspect it was not properly con-
structed.   The evidence in that regard has been devoted entirely to
the north abutment.*"   He then proceeds to call attention to the his-
tory of the north abutment, its construction, the defects that
appeared therein, and concludes :  " If you shall come to the conclu-
sion that the abutment was properly constructed, and that the defend-
ant kept it properly inspected, and that it was properly made at the
time this accident occurred, then the plaintiff is not entitled to a
verdict, but the defendant performed its duty towards Bogart and is
entitled to a verdict at your hands."   It thus appears that the court
did not submit to the jury any question in reference to the struc-
tural defects of the south abutment ; that as to such defects he spe-
cifically limited their consideration to that of the north abutment,
and this was done in such clear and concise language as to leave no
room for doubt.   This is in accordance with the request and is
not complained of.   The court next proceeded to instruct the jury
in reference to the duty of the railroad company as to the size
of the throat or the space between the abutments that should
be maintained in its bridges over streams, and called atten-
tion to the ·magnitude of the freshet on the occasion in question,
and then stated that it was the duty of the defendant to pro-
vide a bridge the opening of which was of sufficient capacity not

only to meet all the ordinary exigencies of the climate and the situation of the stream, but such extraordinary exigencies as the experience of the people about there would leave them to believe might sometimes occur, although infrequently, and in conclusion charged : " So it will be for you to say whether the plaintiff has established here, by all the evidence in the case, that these abutments were improperly constructed, and if they were improperly constructed, then whether or not the defendant after it took possession of this road was guilty of negligence in failing to find out they were improperly constructed and to see that they were properly constructed." It is this portion of the charge that is claimed to be inconsistent with that previously referred to, but, as we have already pointed out, the subject of the structural weakness of the abutments was considered and closed by the court, in which the consideration of the jury upon that subject was limited to the north abutment, and they were plainly instructed that there was no evidence tending to show that there was any reason to suspect that the south abutment was not properly constructed. The court then proceeded to charge upon an entirely different subject, that pertaining to the size of the throat or the space between the abutments of the bridge, and, as we understand the concluding portion of the charge, in speaking in reference to whether the abutments were improperly constructed, had reference to their construction as to size of the throat of the bridge, and not to their structural weakness.

Upon the trial one Hubbell was sworn as a witness for the defendant, and testified that he remembered the construction of the south abutment of the bridge ; that he had charge of the digging of the south foundation pit, and gave evidence tending to show proper construction of that abutment, but stated that he did not see any of the north abutment dug. Upon cross-examination the plaintiff's counsel asked him if he did not state to either Mr. Sisson or to Mr. Miller after the bridge fell, " That you were surprised that the damn thing did not go out before," to which the witness replied that he had no reccollection of ever saying such a word to anybody. The plaintiff then recalled Sisson and asked him as to whether Hubbell had stated to him in substance " that he was surprised that the damn thing did not go out before." To this question defendant's counsel objected as immaterial ; that Mr. Hubbell was not specifi-

cally interrogated in regard to the time and place of this conversation, as required by the rules, and that it was immaterial and collateral. The objection was overruled and the witness was permitted to answer the question in the affirmative.

The rule is well settled that, in laying the foundation to contradict a witness, his attention should be called to the time, place and persons to whom or in whose presence the alleged statement was made. (*Hart* v. *Hudson River Bridge Co.*, 84 N. Y. 56–60; *People* v. *Weldon*, 111 id. 569–575; *Ankersmit* v. *Tuch*, 114 id. 51–55.)

But we are of the opinion that the admission of this evidence, if error, was cured by the charge. As we have seen, his evidence related solely to the south abutment. The contradicting of him by the other witness did no harm, for the judge took from the jury the subject of the structural weakness of that abutment, and limited their consideration upon that subject to the north abutment only.

We have considered the other questions raised, but find nothing that requires a reversal.

The judgment and orders should, therefore, be affirmed.

DWIGHT, P. J., and LEWIS, J., concurred.

Judgment and order appealed from affirmed.