. 78  567
8ap225

CATHARINE HIGGINS, Respondent, *v.* THE NEW YORK, LAKE ERIE
AND WESTERN RAILROAD COMPANY, Appellant.

*Duty of a railroad company in constructing a bridge — liability for the washing
away of real estate caused by its faulty construction — measure of damages.*

It is the duty of a railroad company in constructing a bridge over a stream of
water to provide such bridge with an opening of sufficient capacity to meet all
the ordinary exigencies of the climate and the situation of the stream, and also
such extraordinary exigencies as may occur, although infrequently.

In an action brought to recover damages to real estate caused by the washing
away of soil therefrom, the proper measure of damages is the difference in value
of the premises in question before and after the injury.

*Semble,* that, in such an action, it is proper to show that the plaintiff's claim for
damages is extravagant, by showing that a substantial restoration could be
effected at a trifling cost by filling in the place from which the earth has been
washed away.

APPEAL by the defendant, The New York, Lake Erie and West-
ern Railroad Company, from a judgment of the Supreme Court in
favor of the plaintiff, entered in the office of the clerk of the county
of Steuben on the 1st day of August, 1893, upon the verdict of a
jury rendered after a trial at the Steuben Circuit, and also from an
order entered in said clerk's office on the 13th day of July, 1893,
denying the defendant's motion for a new trial made on the plead-
ings and a case containing exceptions.

*James H. Stevens,* for the appellant.

*Leslie W. Wellington,* for the respondent.

HAIGHT, J. :

This action was brought to recover damages which the plaintiff is
alleged to have sustained to her house and premises by the action of
water during the floods of June 1 and August 1, 1889, through the
negligence of the defendant. The defendant's railroad crosses
Munkey run, a creek in the city of Corning, by means of an iron
bridge resting upon stone abutments. The size of the throat of the
bridge is nineteen and three-fourths feet wide and from two feet
three inches to three and twenty-seven-one-hundredths feet deep.
The area furnished for the flow of water, according to the testimony

·of one of the engineers, was sixty-five and eight-one-hundredths ·square feet. The plaintiff's house is situated on the south side of the defendant's railroad and upon the east side of the creek. Between the house and the railroad track is one of the streets of the city, with a bridge over the creek. The creek is upon the land of the plaintiff, and her barn is located at the rear of her lot and constructed over the creek, resting upon stone walls on either side of the stream. The creek descends from a mountain, running north across several streets and empties into the Chemung river. From the barn to the defendant's bridge the descent is eight feet.

On the occasion of the June flood, gravel, stones and floodwood were carried down the stream, lodging under defendant's bridge, nearly filling the throat thereof, and, as is claimed, extending back through the channel of the stream to the barn, so as to cause the water flowing in the channel of the creek to depart therefrom above the barn and around the end thereof through the plaintiff's lot, cutting a channel therein several feet in depth. The water also filled the cellar underneath her house, destroying some personal property therein and doing other damage. The bridge over the highway was washed away and carried against the bridge of the railroad company, ·and that bridge was raised up upon one side so that the ties upon which the rails were laid stood on ends.

It is claimed that the defendant was guilty of negligence in the construction of its bridge, in not leaving proper space for the flow of the water. It was the duty of the defendant to provide a bridge with an opening of sufficient capacity to meet all the ordinary exigencies of the climate and the situation of the stream, and also such extraordinary exigencies as experience would lead the people residing in that vicinity to believe might sometimes occur, although infrequently. (*Bogart* v. *D., L. & W. R. R. Co.*, 72 Hun, 412; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42; *Ward* v. *Atl. & Pac. Tel. Co.*, 71 id. 81–84.)

The trial court properly and fairly charged upon this branch of the case and submitted the question of fact to the jurors for their determination.

A serious question of fact is presented as to whether the defendant should be chargeable with the damages resulting from the June flood. It was on the occasion of the noted Johnstown disaster, and

the evidence tends to show that the flood was greater in magnitude than had ever been known to exist in that locality.

There is also a question as to whether, in case of liability, the defendant should be charged with the damages resulting from the cutting of a channel through plaintiff's yard, it being claimed that the water was turned from the channel of the stream above the barn by reason of the clogging of the channel under the barn, and that this could not well have been occasioned by any fault in the construction of the bridge, which was located lower down the stream; but, after a careful reading of the evidence, we have concluded that it was of such a character as to justify the trial court in submitting these questions to the jury.

As to the August flood, occurring on emancipation day, the situation is different. Whilst heavy it is not contended that it was of such a magnitude as not to be within the experience of the people. The witness Tong, in substance, tells us that it was dammed up under the railroad bridge with gravel and stone; that the damming was within a foot of the top of the piles and that the water coming from the creek spread over the land east and west; that it ran across the lawn on the corner of the plaintiff's premises next to the creek and took off some of the land and a part of the sidewalk, and that some of the trees in front of the house were washed out. That on that occasion the men were at work upon the track; that there was a stick of timber, about eighteen inches through, which they had chained across the creek, and that railroad planks and pieces of logs were placed at the end of the stick so as to throw the water off, and that it turned the water across the plaintiff's premises. If this evidence is true, it tends to show that much of the damage suffered by the plaintiff on this occasion occurred through the means adopted by the defendant's servants in protecting the bridge; and, if so, there can be no doubt as to the right of the plaintiff to recover. This question was also submitted to the jury. The damages shown to have been sustained by the June flood were much greater than the amount of the verdict awarded, and, judging therefrom, it is probable that the award was made for the damages suffered in consequence of the August flood.

The court charged that the rule of damages to the real estate was

the depreciation in value occasioned by the flood.   An exception was taken to this charge.   During the trial the defendant asked the witness Tourney if he knew what it was worth to cart in dirt for filling.   This was objected to, sustained and an exception taken. The defendant's counsel also offered to show what it would be worth to fill in the ditch with stone, gravel and earth, and put it in the condition it was left in.   This was objected to as not a proper measure of damages, and the objection was sustained and exception taken.   The offer is quite informal.   We presume that it was the intention of the defendant's counsel to refer to the channel that had been cut through the plaintiff's premises, and it, perhaps, was his purpose to show what it would cost to fill that channel and put it in the condition it was in before the flood.   We do not think either exception requires a reversal of the judgment.   It does not appear what the character of the soil was that was washed away, or what it would cost to procure like soil for the purpose of filling, and neither the question nor the offer covers this element of damage.   And this we regard as important when the soil has been washed away, for in such a case it is impossible to restore the same soil.

We are aware that in the case of *Hartshorn* v. *Chaddock* (135 N. Y. 116–122) the judge delivering the opinion says : " The rule seems to be that when the reasonable cost of repairing the injury, or, in this case, the cost of restoring the land to its former condition, is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages; on the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages."

This rule, as it appears to be understood by the appellant's counsel, would establish a double rule of damages, and upon a trial evidence may be given with reference to each, and then the jury adopt that which is the most favorable to the defendant.   In such cases a difference in opinion may often occur as to which would be the most favorable, with the result that part of the jurors may base their verdict upon one measure of damages and the rest upon the other.   We have not so understood the rule where the damages are permanent and the restoration impossible.   If a man has upon his lands a sand bank and a load of sand is taken therefrom, it being an

article of merchandise, his damages doubtless would be the value of the sand taken. If a forest tree was cut therefrom, which had a market value either for lumber or wood, he may be compensated in damages by the awarding to him the value thereof, but if he should have grown fruit trees standing upon his premises, and they should be cut therefrom, the trees would possess no value of consequence after severed from the freehold, and they could not be replaced or repaired, so that the injury would be permanent, and the damages would be the difference in the value of the premises before and after its removal. (*Dwight* v. *E., C. & N. R. R. Co.*, 132 N. Y. 199.)

As we have seen, soil washed away cannot be restored. Other soil may be substituted in its place and the premises partially restored. In such case, it appears to us, the proper measure of damages is the difference in the value before and after the injury. It doubtless would be competent on cross-examination or on the defense to show that the plaintiff's claim for damages was extravagant, by showing that a substantial restoration could be effected at a trifling cost by filling the place from which earth had been washed away. But this would not operate to change the measures of damages. It would only tend to show that the damages were not as great as claimed.

But, as we have seen, neither the question nor the offer referred to was sufficiently comprehensive to cover this question. We have examined the other exceptions presented by the case, but find none that require a new trial.

The judgment and order appealed from should, therefore, be affirmed.

DWIGHT, P. J., LEWIS and BRADLEY, JJ., concurred.

Judgment and order appealed from affirmed.