burned, and its value, and said, "That is all that is required," it was held that it was a question for the jury whether there was a waiver.  Nickerson v. Nickerson, 80 Me. 100–106, 12 Atl. 880; Searle v. Insurance Co., 152 Mass. 263, 25 N. E. 290.  And see Dowling v. Insurance Co., 168 Pa. St. 234, 31 Atl. 1087; Gould v. Insurance Co., 134 Pa. St. 570, 19 Atl. 793; Little v. Insurance Co., 123 Mass. 380.  The case last cited is similar in some of its circumstances to the case at bar, and the court held that evidence was sufficient to authorize the finding that P. and T. acted as general agents, with the knowledge and approval of the company, having authority to settle losses.  Where authority in respect to adjusting losses has been shown in a general agent, it becomes a question for the jury whether such agent or adjuster, by his acts and statements, has waived or dispensed with proofs of loss, and thus raised an estoppel.  Underwood v. Insurance Co., 57 N. Y. 506; Lowry v. Insurance Co., 32 Hun, 329; Bishop v. Insurance Co., 130 N. Y. 488, 29 N. E. 844; Smith v. Insurance Co., 47 Hun, 38–40; Blossom v. Insurance Co., 64 N. Y. 165, 166.  If the agent who issued the policy takes advantage of the ignorance or inability of the insured to read, or misleads him in regard to making proofs of loss, the company ought not to be permitted to take advantage of such action.  Rivara v. Insurance Co., 62 Miss. 721.  If either party to this transaction must suffer by the acts or faults of the agents, it should be the defendant, whose agents they were.

Applying the rules of law established for the disposition of like cases to the evidence presented upon the trial of this action, we are of the opinion that the trial justice disposed of the questions submitted to him according to the rules thus established, and that his decision should be upheld.

The order denying the motion for a new trial should be affirmed, with costs, and the motion for a new trial denied, with costs, and judgment ordered for plaintiff upon the verdict.  All concurred.

----

(8 App. Div. 223)

TOWN OF FT. COVINGTON v. UNITED STATES & C. R. CO. et al.

(Supreme Court, Appellate Division, Third Department.  July 7, 1896.)

1. TOWNS—PROPERTY IN HIGHWAY BRIDGE—ACTION FOR DESTRUCTION.
    A town has such property in a highway bridge as will sustain an action for its destruction.

2. SAME—VERIFICATION OF COMPLAINT — PRESUMPTION AS TO CONTROL OF ACTION.
    A verification of a complaint by a town supervisor, in an action by the town for the destruction of a bridge, does not raise a presumption that the highway commissioner is not the officer in charge of the action, as the complaint may be verified by any town officer having knowledge of the facts.

3. SAME—AUTHORITY TO SUE—UNDER RIGHT OF OBJECTION.
    The objection that an action in the name of a town was not authorized by a town meeting, as required by Laws 1890, c. 569, § 24, cannot be raised by a motion for nonsuit, as that was not one of the issues to be tried in the action, but the objection should be raised by a motion to dismiss.

4. MEASURE OF DAMAGES—TORTS.
    The measure of damages for the destruction of a highway bridge is the amount which the town would necessarily expend in repairing or restoring it.

Appeal from circuit court, Franklin county.

Action by the town of Ft. Covington against the United States & Canada Railroad Company and the Grand Trunk Railway Company to recover damages sustained by plaintiff in consequence of the destruction of one of its bridges, by reason of an ice jam formed between defendant's spile railway bridge, on November 3, 1892. From a judgment for $3,839.75, damages and costs, entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendants appeal. Modified.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Cantwell & Cantwell, for appellants.
Kellas & Munsill, for respondent.

PARKER, P. J. The objections taken by the appellants, that the town has no such property in a highway bridge as will sustain a recovery for its injury or destruction, and that this action is not properly brought, cannot, in my judgment, be sustained. In Bidelman v. State, 110 N. Y. 232, 18 N. E. 115, it is squarely held that a town has such an interest in the preservation of its bridges as gives a right of action against any person who wrongfully, by negligence or otherwise, makes repair or rebuilding necessary. By section 182, c. 569, Laws 1890, it is provided that any action to recover damages for injury to the property of a town shall be brought in the name of the town. Here is sufficient authority for bringing the action in the name of the town, and to sustain the claim that the loss of the bridge was an injury to its property.

It is further complained that the action is brought by the supervisor, and that the highway commissioner is the only officer who can maintain the same. The record does not disclose what officer has instituted or has charge of this action, except that the complaint is verified by the supervisor of the town. Such verification does not raise any presumption that the highway commissioner is not the officer in charge of the action. The recovery is to be had in the name of the town. In that respect the record is correct, and we cannot presume that the action is being improperly prosecuted. Any officer who knew the facts might verify the complaint. Moreover, no such objection seems to have been taken prior to the appeal, and it should not now for the first time be entertained.

The appellants took the further objection, by a motion for nonsuit, that it had not been proven that authority to bring the action had been given by any town meeting, as required by statute, referring to section 24, c. 569, Laws 1890. We do not think that action on the part of the town meeting, under that section, is a fact necessary to be averred and proven in order to entitle a town to recover upon a cause of action shown to exist in its favor. If the defendants had any advantage arising from such an omission, and wished to secure

it, they should have moved to dismiss the action on that ground. It is not, in my judgment, one of the issues to be tried in the action. Whether plaintiffs have legal authority to sue can only be presented on motion. People v. Clark, 21 Barb. 214; Board v. Pindar, 3 Lans. 8–14.

It is strenuously urged by the appellants that the facts proven do not show any wrongful act or neglect on their part to which the plaintiff's loss can be ascribed. The extent to which the defendants might interfere with the natural flow of the stream, and the rule of law which fixed their liability, were correctly stated by the trial court, in its charge to the jury. Bellinger v. Railroad Co., 23 N. Y. 42; Higgins v. Railroad Co., 78 Hun, 567, 29 N. Y. Supp. 563. And whether or no the structure which they had built across such stream violated such rule, and caused the destruction of the plaintiff's bridge, was a question of fact for such jury. I have carefully examined the evidence on this question, and I conclude that their verdict should not be disturbed in this respect. Although there was more ice formed that year, perhaps, than usual, the flood does not seem to have been an unusual or extraordinary one. There was evidently a serious ice jam formed by the fact that the openings between the piles of the railroad bridge were not wide enough to allow it to pass through. There is considerable direct evidence that the ice backed up, and lifted the town bridge off of its seat on the piers and abutments; and I do not consider the defendants' expert evidence conclusive on that question.

It seems that the railroad bridge was constructed and owned by one of the defendants, and, after the lease, its repair and maintenance seem to have been the joint act of both. Both were responsible for its being there, and I am by no means prepared to hold that 11-feet openings were sufficient, or could reasonably have been expected to be sufficient, in such a stream as that. That question was well left to the jury, and their decision should not be reversed.

As to the question of plaintiff's negligence, there is nothing in the case indicating any act or omission on its part that can be said to have contributed in any proper sense to the taking off of the bridge. No defense in this action can be sustained upon that ground.

It is a more serious question whether the jury have not given more damages than the evidence will warrant. The town is held to have an interest or property in the bridge, because it is under an obligation to keep it in repair, and make it suitable for public travel; and the measure of its damages would therefore seem to be the amount which it must necessarily expend to repair or restore it. Such is the rule which was recognized and applied in the Bidelman Case, above cited. In the case at bar, two witnesses were sworn by plaintiff upon the question of damages. McKinney puts the cost of restoring the piers at $2,000. He gives no figures whatever as to the cost of restoring and replacing the iron bridge. Storm, the other witness, puts the expense of replacing the piers at $1,500; and to put the old bridge back, he says, would cost from $1,150 to $1,200. There does not seem to be any dispute but that it was practicable to recover and replace the same bridge that was carried away. Evidently, Storm, who put

up the new piers, is a much more competent witness than McKinney, who seems to have had very little practical or personal knowledge on the subject. The evidence of Nash, the defendants' witness, on this subject, is that the piers could have been rebuilt for $240, and that the bridge could have been restored and replaced for $600. Here is a vast conflict in the evidence; and while Nash was the man who built the old bridge, and evidently had had greater experience in the business than the others, we cannot say that the jury should have adopted his figures, and discarded the others. But the verdict is for $3,636.50, a figure considerably more than it appears from plaintiff's evidence it would cost it to replace it. For instance, McKinney makes cost of rebuilding piers $2,000, and Storm makes cost of restoring and replacing bridge $1,200,—total, $3,200, at plaintiff's highest figures. But Storm's estimate of rebuilding piers was only $1,500, which would make the total expense of restoring bridge and piers only $2,700. In my judgment, this is the extreme sum which plaintiff should have recovered.

I do not find that there are any exceptions in the case which require a reversal of the judgment. My conclusion is that the amount of the damages specified in the judgment should be reduced to $2,700; and, if plaintiff consents to that, the judgment, as so modified, should be affirmed, with costs; otherwise, the judgment should be reversed, with costs. All concur.