GREELEY v. STATE.

(Supreme Court, Appellate Division, Third Department. May 4, 1904.)

1. CANALS—AQUEDUCTS—INJURIES FROM OVERFLOW—LIABILITY

Laws 1894, p. 629, c. 338, § 37, providing that damages shall be recover-able against the state, resulting from the management of state canals, or from the neglect of any officer having charge of them, in any case where an individual or corporation would be liable, renders the state liable for its failure to provide, in the management of an aqueduct for a canal across a stream, openings of sufficient capacity to meet all the ordinary conditions of the stream, and such extraordinary exigencies as may occur.

2. SAME.

On the issue of the liability of the state for injuries sustained to a landowner by reason of a flood caused by a dam formed at an aqueduct for a canal, because of the insufficient openings in the aqueduct, evidence examined, and *held* to authorize a recovery for the damages sustained.

3. ACT OF GOD—CONCURRENT NEGLIGENCE—LIABILITY.

One is not relieved from liability for his negligent acts, though they merely contribute to an injury produced by an act of God.

Appeal from Court of Claims.

Action by William Greeley against the state of New York. From a judgment for the state, the claimant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Keck & Rogers, for appellant.

John Cunneen, Atty. Gen., and S. S. Taylor, Dep. Atty. Gen., for the State.

HOUGHTON, J. For many years the state has maintained an aqueduct for the Erie Canal across Flat creek, in Montgomery county, a short distance above its entrance into the Mohawk river. Just above the aqueduct the creek is about 100 feet in width, and, after it passes through, it narrows to about one-half that distance. The aqueduct is supported by piers which make five openings, of about 20 feet each, through which the creek runs, and is built of large timbers, which are removed at the close of navigation in each year, leaving no obstruction to the flow of the creek and the passage of ice, except the piers. For some years the easterly opening has been permanently closed by earth and stone, leaving but four openings for this purpose. In the fall of 1901 the defendant's superintendent allowed the westerly opening or pond to remain closed by a waste gate and timbers, thereby still further narrowing the channel of the stream. In March, 1902, the ice in the creek broke up, floated down to the aqueduct, and piled up on the closed bent and the remaining piers, making a dam 12 or 15 feet high, which flooded the water back upon the claimant's land, destroying his orchard, and carrying his house from its foundation, thereby overturning a stove and setting the house on fire. The house and buildings surrounding it had been erected 20 years and more, and no similar catastrophe had occurred.

¶ 3. See Negligence, vol. 37, Cent. Dig. § 80.

The theory of the claimant upon the trial was that if the four openings between the piers had been left open, as usual, instead of three only, the ice would have passed through, no gorge would have been formed, and no disastrous flood would have occurred. There was no proof before the court that similar breaking up of ice and freshets had occurred in which the four openings had not properly taken care of the ice and water. Nor is there any testimony that the flood was anything more than an ordinary one, except in its results. At the time it was decided to leave the westerly bent closed, there was discussion as to whether or not it was safe to do so; some engaged in the work insisting to the superintendent that it would be dangerous if high water occurred, and others maintaining that it would not.

Section 37, c. 338, p. 629, of the Laws of 1894, provides that damages shall be recoverable against the state, resulting from the use or management of the canals, or arising from the neglect or conduct of any officer of the state having charge of them, in any case where an individual or corporation would be liable. It is the duty of an individual or corporation constructing a bridge over a stream to provide such bridge with an opening of sufficient capacity to meet all the ordinary exigencies of the climate and the situation of the stream, and also such extraordinary exigencies as may occur, although infrequently. Higgins v. N. Y., L. E. & W. R. Co., 78 Hun, 567, 29 N. Y. Supp. 563; Mundy v. N. Y., L. E. & W. R. Co., 75 Hun, 479, 27 N. Y. Supp. 469. Hence it follows that a like duty is imposed upon the state in the construction and management of an aqueduct. Shannahan v. State of New York, 57 App. Div. 239, 68 N. Y. Supp. 131.

So far as the record discloses, the four openings which had been customarily left unobstructed at the close of navigation each year prior to 1901 were sufficient to allow the passage of water and ice during the winter and spring freshets. Bodies of water freeze in this climate, and, upon the breaking up of streams, freshets occur; and it was the duty of the defendant to guard against not only the ordinary freshets, but also such extraordinary ones as were likely to occur in the stream in question. The fact that the four openings had taken care of the water, and that the buildings which were carried off by the freshet of 1902 had stood for a long number of years while those openings were maintained, was some evidence that the closing of one of them caused the damage, and that the act of the superintendent in leaving one of them closed was a negligent and improvident act. This was so, especially in view of the circumstance that his attention was called to the fact that it would probably be dangerous and cause a flood if he did not clear the opening. The claimant therefore proved circumstances from which negligence on the part of the state official could be fairly inferred, and the court was not authorized in dismissing his claim for lack of proof of that fact.

There are no findings of fact, and nothing in the record except the judgment dismissing the claimant's claim; and we are not apprised whether the claim was dismissed because the claimant failed to establish any negligence on the part of the officers of the state, or whether it was upon the ground that the flood was an act of God, for which no one was responsible. There was, however, no proof in the case

that the freshet was so extraordinary as to be one which the defendant was not bound to guard against. In order that the defendant should be relieved from liability on that ground, if it can be relieved at all by reason of its negligence in leaving the opening closed, much more proof is necessary than was adduced at the trial. Without deciding the point with reference to what may be proven on a retrial of the present case, it may be stated as a general rule that injury produced by an act of God does not relieve one from liability where his own negligent acts concur in or contribute to the injury. Michaels v. N. Y. C. R. Co., 30 N. Y. 564, 86 Am. Dec. 415.

It is also claimed that the proofs established that the ice gorge was formed between the aqueduct and the river, and that this gorge caused the water to flow back, and not the gorge at the aqueduct. One witness says that he thinks the ice was gorged all the way from the river to the aqueduct, and, on cross-examination, testifies that the lodging of ice in March, which is the time complained of, commenced at the aqueduct. Another witness testifies that it was in the freshet of December previous that the creek below the aqueduct was filled with ice, and that at the March freshet no water backed up to the aqueduct. And still another witness says that the water from below came only part way up to the aqueduct. It is quite apparent that the gorge and dam of ice at the aqueduct flowed back the water and broken ice and caused the injury to claimant's property. Under the facts appearing in the record, the claimant was entitled to recover, and it was error to dismiss his claim.

The judgment should be reversed on the law and the facts, and a new trial granted, with costs of the appeal to the appellant. All concur.