(151 App. Div. 274.)

## NEW ENGLAND BRICK CO. v. STATE.

(Supreme Court, Appellate Division, Third Department.    May 8, 1912.)

1. WATERS AND WATER COURSES (§ 55*)—OBSTRUCTIONS—BRIDGES AND CULVERTS.

   Where there was evidence that a rainfall of one inch an hour was a heavy rainfall but occurred frequently, that such a rainfall would cause 18,000,000 gallons of water an hour to flow through a brook passing under a canal by means of a double culvert maintained by the state, that the maximum capacity of the culverts was 12,000,000 gallons an hour, that a stump had been across one of the culverts for some time, and that the culverts were not kept reasonably clean and free from accumulations of débris, a claim against the state for injuries from the water of the brook backing up and overflowing plaintiff's premises, caused by the inability of the culverts to carry it off, was improperly dismissed; it being the duty of the state to provide for even extraordinary floods if they might be reasonably expected to occur occasionally.

   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 46; Dec. Dig. § 55.*]

2. WATERS AND WATER COURSES (§ 63*) — OBSTRUCTIONS — FINDINGS — EVIDENCE.

   A finding that since 1826 only two storms, as severe as that causing the damages of which plaintiff complained, had occurred, was unsupported by the evidence, where no witness claimed to have a recollection extending back to 1826 and no records going back that far were produced.

   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 51, 53; Dec. Dig. § 63.*]

Appeal from Court of Claims.

Proceedings on a claim by the New England Brick Company against the State. From a judgment dismissing the claim, the claimant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Benj. B. Hutchins (Robert Frazier, of counsel), for appellant.

Thomas Carmody, Atty. Gen. (Henry Selden Bacon, of counsel), for the State.

BETTS, J.    [1] The New England Brick Company, a foreign corporation organized and existing under the laws of the state of Maine, was the owner on September 4, 1907, and for some time prior thereto, of a brickyard in the town of Half-Moon, Saratoga county, N. Y., near the village of Mechanicville.    Running through the said premises of claimant is a small stream known as the "Hart" or "Hollow" brook.    This brook drains this valley containing about two square miles of land, and after leaving the premises of claimant, said brook flows under a highway bridge, and, about 75 feet beyond that, flows by means of a double culvert with two rectangular openings

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

about 60 feet long, about 2 feet 9 inches wide, and 4 feet 4 inches high under the Champlain Canal belonging to the defendant, and which culverts were erected and are maintained by it. On September 2, 3, and 4, 1907, there was a rainstorm in that vicinity which was very severe on the 4th. It is claimed by the brick company that the double culvert in question, constructed by the state in about 1823, was insufficient to carry off the water of this stream at the time of this storm, and as a result the water backed up and overflowed the claimant's brickyard and put out the fires under a kiln of brick, destroying many thousands of brick partly burned, many thousands of brick unburned, some yellow ochre, and a private bridge of claimant, and in addition damaged a dwelling house belonging to claimant. It is claimed all this damage occurred because of the insufficient size of this double culvert to carry off the water which reasonable foresight and prudence and engineering skill on the part of the defendant should have foreseen would have been likely to have occurred at times of heavy rainfall, and that the defendant was also negligent in not properly keeping the culverts in question cleaned so as to take the waters from the brook. The Court of Claims found against the claimant dismissing its claim, and from this decision the claimant appeals.

It appears that there was a rainfall in 1864 and another in 1887 of about the same volume as that of these September days, 1907, and that each time the water of the brook was dammed back by the culvert so that it overflowed the canal bank. The court finds that by reason of such flooding of claimant's brickyard in September, 1907, that the personal property of claimant was damaged and also the dwelling house in question. It appeared in evidence that on September 2d for 24 hours the rainfall was .45 of an inch. On September 3d the rainfall was .7 of an inch, and on September 4 it was 4.25 inches; this amount being in each instance for the 24 hours of the day, and no definite evidence being given as to what portions thereof fell during any particular part of either of these days.

The court found that the capacity of the said double culvert was about 5,000,000 gallons of water per hour when the water reached the height of the top of the culvert and about 9,000,000 gallons per hour when the water was about 10 feet above the top of the culvert. and about 12,000,000 gallons of water per hour when the water was running over the top of the canal bank, also that a rainfall of one inch upon two square miles amounts to 34,755,000 gallons of water, that the actual run-off from the watershed of Hart brook would be about 18,000,000 gallons of water in one hour, that an inch of rainfall per hour is a heavy rainfall, and that it occurs frequently. Thus it appears from the finding of the court that the culvert as constructed was not sufficient to carry off an inch of rainfall per hour which occurs frequently. The court also found that an inch of rainfall per hour is the usual basis for making calculation for the construction of culverts. Hence it appears that without any obstruction of the culvert it was not of sufficient size to carry off the rainfall that might reasonably be expected to occur in this valley and

which frequently did occur. When the water rose high enough to flow over the canal banks, it would back up so as to flood claimant's brickyard.

Findings of fact Nos. 34 and 35 are as follows:

"(34) That there was a rainfall in the afternoon of September 4, 1907, over the drainage of Hart brook as appears by gauges taken within one mile of claimant's property of 4.25 inches.

"(35) That the rainstorm which occurred on the 4th of September, 1907, was an extraordinary storm; no other storm of equal severity having occurred in 20 years, and only two such storms having been known since the year 1826."

[2] These findings are unsupported by the evidence. There is no evidence that this 4.25 inches of water fell only in the afternoon. Nor is there any evidence that only two such storms as did occur were known to have occurred since the year 1826. Of course, no one was produced on this trial who claimed to have any recollection running back to 1826, and no one was produced with records that ran back so far as that. So that we have a culvert constructed by the defendant under this canal that was manifestly of insufficient size to carry away the water that was reasonably to be anticipated by competent engineers to flow down this brook from the rainfall in this valley. In addition, testimony was given by which the court should have found that there was a stump that had been across one of these culverts for some time prior to this September storm, and evidence tending to show that these culverts were not properly cared for by the state so far as keeping them reasonably clean and free from accumulations of débris that were deposited therein, and there is evidence from which the court might have found, and which was practically uncontradicted, that this condition had existed for some time prior to the injury done to claimant's property.

In Mundy v. New York, Lake Erie & Western Railroad Co., 75 Hun, 479, 27 N. Y. Supp. 469, a part of the syllabus is as follows:

"The party constructing a dam should construct it in such a manner as to resist such extraordinary floods as may be reasonably expected occasionally to occur, and it is a question for the jury to determine whether a flood of an extraordinary character was such that it should have been anticipated and provided against. The same principle applies as to the construction of a culvert in an embankment traversing the overflow bed of a river."

A recovery had in that case was affirmed, and see the numerous cases in that opinion cited.

In Higgins v. New York, Lake Erie & Western Railroad Co., 78 Hun, 567, 568, 29 N. Y. Supp. 563, 564, Judge Haight says:

"It was the duty of the defendant to provide a bridge with an opening of sufficient capacity to meet all the ordinary exigencies of the climate and the situation of the stream, and also such extraordinary exigencies as experience would lead the people residing in that vicinity to believe might sometimes occur, although infrequently.".

In Greeley v. State of New York, 94 App. Div. 605, 88 N. Y. Supp. 468, a case very similar to this (Justice Houghton writing), it is said:

"It is the duty of an individual or corporation constructing a bridge over a stream to provide such bridge with an opening of sufficient capacity to meet all the ordinary exigencies of the climate and the situation of the stream, and also such extraordinary exigencies as may reasonably be expected to occur, although infrequently. Higgins v. N. Y., L. E. & W. R. R. Co., 78 Hun, 567 [29 N. Y. Supp. 563]; Mundy v. N. Y., L. E. & W. R. R. Co., 75 Hun, 479 [27 N. Y. Supp. 469]. Hence it follows that a like duty is imposed upon the state in the construction and management of an aqueduct. Shanrahan v. State of New York, 57 App. Div. 239 [68 N. Y. Supp. 131]."

See, also, Wilson v. Pennsylvania Railroad Co., 129 App. Div. 821, 113 N. Y. Supp. 1101, and also Rochester White Lead Co. v. City of Rochester, 3 N. Y. 463, 53 Am. Dec. 316.

In the light of these authorities, and in view of the situation as disclosed by the evidence here, I think that the claimant had a valid claim against the state of New York, and that its reasonable damages should have been allowed by the Court of Claims.

It follows that the determination of that court should be reversed, and a new trial granted, with costs to the claimant to abide the event. All concur.