KARRAT BROS. & CO., INC., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30674.)

FRIEDA KARRAT, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30675.)

GEORGE KARRAT, an Infant, by FRIEDA KARRAT, His Guardian ad Litem, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30676.)

JOHN KARRAT, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30677.)

JAMES RAYA, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30678.)

Court of Claims, November 24, 1954.

*Salvador J. Capecelatro* for Karrat Bros. & Co., Inc., and others, claimants.

*Nathaniel L. Goldstein, Attorney-General (Edward R. Murphy* of counsel), for defendant.

YOUNG, J. On November 24th, through the 26th, 1950, the State of New York suffered the most damaging storm of its history. Rain, falling in sheets, was driven by winds of hurricane proportions, with velocities reaching as high as seventy-five miles an hour. Roofs were blown off and store fronts were blown in; television antennae were broken off and chimneys were toppled. Electric service and telephone communications were early casualties.

In the heavily forested areas in the path of the storm, trees were uprooted and jumbled together on the ground in wide swaths. Trees numbering in the thousands fell across the roads of the State. In the six counties making up District No. 2 of the Department of Public Works, 822 trees had to be removed from highways. In one of these counties, Herkimer, 106 trees fell across the 240 miles of State-maintained roads.

The men and emergency crews of the Department of Public Works labored valiantly night and day, in risk of their own safety, to attempt to keep the roads open even while the storm was raging at its worst. It was an impossible task. Trees fell faster than they could be cleared away. The hurricane wind made it difficult for workmen out in the storm to keep their feet, and the wind and rain knocked over signs and made working conditions intolerable.

At about ten o'clock in the morning of November 25th, a large oak tree fell across Route 5S at a point about three miles east of Utica, in Herkimer County. As it fell it carried with it wires of the Niagara Mohawk Company's power lines. These wires, which were "live" and carried 4,160 volts, became entangled in the tree and started arcking and flashing.

The fallen tree was reported to the chief of police of Frankfort, the next village to the east. To reroute traffic, the chief set up a barrier in Frankfort across the westbound traffic lane of Route 5S. On the barrier, he attached a sign reading "Detour".

Thereafter the fallen tree was reported to John Roszykiewicz, assistant to the County Assistant Engineer of Herkimer County. Two patrol gangs, a bulldozing grader and a heavy truck were immediately sent to the point where the highway was blocked by the tree and Roszykiewicz followed. Seeing the arcking wires, Roszykiewicz ordered his men not to touch the tree until the power had been turned off by the Niagara Mohawk Company. This company was called repeatedly during the day and asked to turn the power off. This was never done and the State men were effectively prevented from removing the tree from the highway.

A crew waited in vain all day by the tree for the power to be shut off. Finally at five o'clock five bombshell flares and two red lanterns were lighted and placed across Route 5S about fifteen feet east of the tree. The men left the tree sometime shortly after six-fifteen and at that time the flares and lanterns were still lighted.

Five more flares were placed in front of the barricade in the village of Frankfort and a red lantern was hung from each end of it.

Between six-fifteen and the occurrence of the accident hereinafter described Roszykiewicz found that the barrier in Frankfort had been blown or knocked out of position and the flares extinguished. He put the barricade back in position and relighted the flares. He then drove to the tree and found the flares were out and he relighted them.

Upon returning to Frankfort it was found that the barrier was again down, the lanterns smashed and the flares extinguished. Again the barrier was restored to place and the flares relighted.

Early that morning claimant John Karrat left New York City, driving a car owned by the claimant corporation, and accompanying him were his wife, Frieda, his two children and his brother-in-law, James Raya. The group stopped in Schoharie where John Karrat had business and then left at four-thirty in the afternoon to drive to their home in Utica. During the drive, especially the latter part, the storm was raging, with strong winds and heavy rains. Darkness overtook them and visibility was reduced to a maximum of forty to fifty feet. Still the group traveled on.

Leaving Frankfort on Route 5S, the driver saw no flares or barrier. He continued on, driving at from sixteen to eighteen miles an hour, until a few minutes after seven o'clock, when,

without the driver having seen any flares or lanterns, the car crashed into the tree, causing the damages for which suit is brought.

The court finds that the State of New York had no notice, actual or constructive, of any defective condition of this tree prior to its falling. Indeed, the fact that it took a wind of hurricane velocity to topple it seems to belie the fact that there was anything defective about it.

Aside from the alleged defective condition of the tree, it is claimants' position that, granted the tree to have been felled by an act of God, the State was still negligent, not for its failure to clear away the electrified tree, but for its failure to give the traveling public adequate warning of it after having notice of its presence for some nine hours.

The cases leave no doubt that where the defendant has had no opportunity to act, he is not liable for the injuries caused by an otherwise safe instrumentality made dangerous by an act of God. (*Norling* v. *Allee,* 10 N. Y. S. 97, affd. 13 N. Y. S. 791, affd. 131 N. Y. 622; *Barnet* v. *New York Central & Hudson River R. R. Co.,* 222 N. Y. 195; *Uggla* v. *Brokaw,* 77 App. Div. 310; *Acheson* v. *Roth,* 169 N. Y. S. 461; *Rezsek* v. *Southern Pacific Co.,* 111 Misc. 180.)

At the same time, where injury has been brought about by an act of God coupled with negligence on the part of the defendant, he is held liable. (*Greeley* v. *State of New York,* 94 App. Div. 605; *Woodruff* v. *Oleite Corp.,* 199 App. Div. 772; *General Cigar Co.* v. *Reading Co.,* 265 App. Div. 322; *Sinischalchi* v. *Baslico,* 92 N. Y. S. 722.)

The cases recognize the fact that following an unprecedented storm, the municipality must be given a reasonable time in which to take remedial action. (*Yonki* v. *City of New York,* 276 App. Div. 407; *Rapoport* v. *City of New York,* 281 App. Div. 33.)

It is without question that an act of God felled the tree in the case at bar, but it also must be remembered that this act of God did not arrive on the scene in an instant, wreak its damage and then move on. This force of nature came to Herkimer County many hours before the tree fell and it remained for a day after. In fact, it did not reach its full fury until about ten hours after it toppled the tree.

No case has come to our attention which delineates the duties of the State to act, or defines its liability for failure to act, while such a storm is in progress. It seems to us that the problem inherent in the decision is whether or not the State should be

required, while the same act of God which felled the tree was continuing, to take the same precautions which would legally have been required of it had the storm been abated.

This court is of the opinion that the State of New York took every reasonable precaution possible under the circumstances to guard the public against collision with this tree.

No government could possibly keep itself prepared to handle a catastrophe of the proportions of this storm. Improvisation was the order of the day and chances are that much that was done that day by the laboring forces of the Department of Public Works was rendered futile by the raging elements.

Immediately upon receiving report of the fallen tree, the State's men were prepared to clear it away and were prevented from doing so by the high voltage wires. Hoping for an opportunity to clear the road when the power was shut off, a crew remained by the tree all day, when in all probability, it could have been put to much better use elsewhere. When night fell, the crew, before leaving, left the obstruction adequately lighted. Constant recheck was made and the flares were relighted and the barrier in Frankfort replaced.

It is difficult to imagine what further precautions could have been taken and whether or not any precautions would have been of value under the circumstances. The claimants have suggested that a man should have been left at the tree to warn oncoming traffic. Such a suggestion presupposes that there were men available for guard duty, when in fact the number of men available for active labor was greatly insufficient. Such a suggestion does not take into account that all the available men had been working day and night far in excess of the regular hours and were entitled to some rest. Such a suggestion does not consider that a man ordered to stay out in the open on such a night, with its heavy rain, hurricane wind, fallen trees and live wires, might be in far greater danger than a member of the traveling public, who at least would be on the road of his own volition.

This court feels that the tree was brought down by an act of God, that the State took every reasonable precaution to guard the traveling public against its hazard, and that every precaution taken was set at nought by the same act of God. The injuries were very serious, especially those of claimant Frieda Karrat, but for these injuries and damages resulting, the State should not be held liable.

The claims are dismissed in an accompanying decision.