poration engaged in business in the city of Cleveland, sent its manufactured goods to its salesrooms in the city of New York to be sold. The proceeds of the sale of its goods were at once remitted to its principal office in Cleveland, only a sum sufficient being reserved for the purpose of paying the expenses of the business which it conducted in the state of New York. The amount reserved and deposited in bank at the time when the tax was levied was $781.45. The average value of the goods kept on hand for sale amounted to about $15,000. The court held that the relator was only taxable upon its bank account, and not upon the property used about the business, or that kept on hand for sale. Excluding the bank account which was taxed, and we have every essential element of the present case. Upon appeal to the Court of Appeals this case was affirmed on the opinion below (149 N. Y. 623, 44 N. E. 1128), and has been since cited with approval (People ex rel. Armstrong Cork Co. v. Barker, 157 N. Y. 159, 51 N. E. 1043). There can be no distinction between that case and the present. The doctrine is made to rest upon the rule laid down in People ex rel. The Parker Mills v. The Commissioners of Taxes, 23 N. Y. 242, and that rule is decisive of this case. Numerous cases exist where a different conclusion has been reached, but an examination of each one will show an essential difference between the cases. See People ex rel. Crane v. Feitner, 49 App. Div. 108, 62 N. Y. Supp. 1107; Pople ex rel. Durand-Ruel v. Wells, 41 Misc. 144, 83 N. Y. Supp. 936, affirmed on appeal 92 App. Div. 622, 87 N. Y. Supp. 1144; People ex rel. Goetz Silk Mfg. Co. v. Wells, 42 Misc. 86, 85 N. Y. Supp. 533, affirmed on appeal, 93 App. Div. 613, 87 N. Y. Supp. 1144. See, also, Vaughn Machine Co. v. Lighthouse, 64 App. Div. 138, 71 N. Y. Supp. 799. These authorities discuss the rule announced in the case first above cited, and point out the distinction. It is therefore unnecessary that we reiterate here the facts and arguments which differentiate them.

The rule of the first case being applicable, it follows that the order should be reversed and the assessment canceled, with costs to the relator.

VAN BRUNT, P. J., and PATTERSON and LAUGHLIN, JJ., concur. O'BRIEN, J., dissents.

---

(98 App. Div. 402)

### ERWIN v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. WATER COURSES—WHAT CONSTITUTE.
    A depression from 2 to 5 feet deep, and 150 to over 300 feet wide, having no defined banks, tilled like the surrounding field, and having flowing water in it only three or four times in 40 years, is not a water course.

2. SAME—OBSTRUCTION—LIMITATIONS.
    Where a drain is obstructed, and a destructive flood results, limitations then begin to run against the right of action for the obstruction.

Appeal from Trial Term, Steuben County.

Action by Susan G. Erwin against the Erie Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Francis E. Wood, for appellant.
George N. Orcutt, for respondent.

SPRING, J. The plaintiff is a life tenant, and, in common with others, whose interest in the present cause of action she has acquired, is the owner in fee of a farm of about 200 acres in the town of Erwin, county of Steuben. She has commenced this action to recover damages caused by the overflowage of water which she claims was diverted from its natural channel by the defendant. The defendant's railroad is constructed through the farm of the plaintiff, with an embankment of about 16 feet in height. Tioga river, which is about one-third of a mile south of the railroad, is the southerly boundary of the plaintiff's farm, 94 acres of which are between the river and the railroad. The buildings are upon the southerly side of this part of the farm, and the highway leading from Corning to Addison passes through this tract. The farm is level, tillable land. The valley through which the river flows is a mile in width. A short distance west of the plaintiff's farm the Tioga river makes a sharp turn to the south, and at this point it unites with the Canisteo river, running then eastwardly. In times of high water at the confluence of these rivers the water has overflowed its banks. The plaintiff's contention is that this water ran in a natural channel in a northeasterly direction across what is now the defendant's right of way, and then, spreading out over a marshy tract of land, finally joined either with the river again, or with the Cohocton river. In December, 1901, and again in. March following, in times of an extraordinary freshet the river overflowed its banks, washing away the soil and fences from the farm, flooding the buildings, and destroying the hay, grain, tobacco, and other contents of the buildings, the damages whereof were assessed by the jury at $3,500. The railroad embankment was constructed by the defendant's predecessors in title about 1850. It then constructed a culvert under its tracks at the place where the plaintiff contends the natural channel for the overflowage of water exists, and the same was maintained until 1858. The culvert was then removed and filled in with earth, and the embankment has been since continued in that condition uninterruptedly.

The alleged natural channel is a depression in the soil varying in depth from 2 to 5 feet, and in width from 150 to over 300 feet. There are no defined banks to this sag, and, as far back as the memory of man runneth, it has been tilled and cultivated, and crops raised, the same as on any other portion of the farm of the plaintiff. There was no break in the sod along this depression, and nothing to distinguish it from the adjacent soil. We think it cannot be called a natural channel or a natural stream of water. The elements

of a water course are definite banks, and with an obvious bed or channel showing the presence of running water at times, anyway. As was said in Barkley v. Wilcox, 86 N. Y. 140, 40 Am. Rep. 519, at page 143, 86 N. Y., 40 Am. Rep. 519:

"A natural water course is a natural stream, flowing in a defined bed or channel, with banks and sides, having permanent sources of supply. It is not essential, to constitute a water course, that the flow should be uniform or uninterrupted. The other elements existing, a stream does not lose the character of a natural water course because in times of drought the flow may be diminished or temporarily suspended. It is sufficient if it is usually a stream of running water."

In Farnham on Waters, at page 1555, it is said:

"It cannot be contended that a depression or natural drainway which merely carries the water in rainy seasons is a water course. It presents none of the characteristics of a water course, except that at times water flows in it."

Of like import is Jeffers et al. v. Jeffers et al., 107 N. Y. 650, 14 N. E. 316.

The significant circumstance establishing that this depression was not a natural water course is that, for more than 40 years prior to the flood which caused the damages in question, not more than three or four times has the overflow of the river run along it. A channel which is the bed of a stream implies that water runs in it at other times than when there is an unusual flood. A creek or river flowing through a valley is apt to overflow in times of high water. The overflowing water naturally seeks the depressions, and follows them along. This rare use does not constitute these uneven, irregular depressions a natural channel for water to run in, so that it partakes of the characteristics of a water course, as a stream of running water.

The cases upon which the appellant's counsel relies to uphold this branch of his cause of action are readily distinguishable. In Mundy v. N. Y., L. E. & W. R. Co., 75 Hun, 479, 27 N. Y. Supp. 469, the flood channel had well-defined banks, and the defendant maintained a culvert which was insufficient and was not in line with the channel. Drake v. N. Y., L. & W. R. Co., 75 Hun, 422, 27 N. Y. Supp. 739, is a kindred case to the one last cited, in its controlling features.

There being no well-defined channel, within the legal definition of that term, this overflowage comes within the rules applicable to surface water, in obstructing which no liability is ordinarily created. Egener v. N. Y. Rockaway Beach R. Co., 3 App. Div. 157, 38 N. Y. Supp. 319; Conhocton Stone Road Co. v. B., N. Y. & E. R. R. Co., 3 Hun, 523–528.

But if the plaintiff ever had a cause of action, the prescriptive period has long since erected a barrier to it. The culvert was removed in 1858, and the embankment has continued to stem and deflect the water overflowing the river banks since that time. At long intervals—notably in 1865 and in 1899—the farm was flooded with this water. The cause of action matured upon the first obstruction of the channel. That act constituted an interference with

the rights of the owner, if any there were, and it was an open, notorious assertion of dominion in hostility to her claim. Actual damages need not follow the usurpation immediately, to make a cause of action. If the natural result of the dispossession was injury to the plaintiff's property, she could have sued at once to enjoin the continuance of the obstruction. But in this case the proof indisputably shows that water overflowed and ran along this depression and deluged the farm by reason of the embankment more than 35 years before this action was commenced. Clearly it is too late for her now to maintain her cause of action for damages. Judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except HISCOCK, J., not voting.