WILSON v. PENNSYLVANIA R. CO. et al.

(Supreme Court, Appellate Division, Fourth Department.   January 6, 1909.)

1. WATERS AND WATER COURSES (§ 179*)—RAILROADS—CONSTRUCTION—WATERS —BRIDGES—ACTIONS—CAUSE OF INJURY—SUFFICIENCY OF EVIDENCE.

   In an action against a railroad for damage to property by flood water backing into a house, evidence *held* to show that the backing up of the water was caused by the insufficient opening under defendant's bridge over a stream.

   [Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 179.*]

2. WATERS AND WATER COURSES (§ 171*)— RAILROADS—CONSTRUCTION—BRIDGES —CARE NECESSARY.

   Where it was well known, when a railroad reconstructed its bridge over a stream, that another stream had periodically overflowed its banks, and that the overflow drained into the bridged stream and passed under the bridge, the company should have anticipated such overflow and guarded against it by leaving an opening sufficient to pass all the water during such floods, though they were infrequent, and its failure so to do was negligence rendering it liable for damages to plaintiff's lands by water backed up by the obstruction.

   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 216; Dec. Dig. § 171.*]

3. WATERS AND WATER COURSES (§ 38*)—"NATURAL WATER COURSES."

   Where the stream over which a railroad bridge was erected was at that point a living stream, with a well-defined channel, it was a "natural water course."

   [Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 38.*

   For other definitions, see Words and Phrases, vol. 5, pp. 4671, 4672.]

4. WATERS AND WATER COURSES (§ 171*) — RAILROADS — CONSTRUCTION — WATERS—CONSTRUCTION OF BRIDGE—LIABILITY FOR NEGLIGENCE.

   Defendant's railroad bridge crossed a small stream which flowed into another, the waters of which periodically overflowed. At such times, following the slope of the land, the flood water flowed across the country about a mile into the tributary and under the bridge, but in rebuilding the bridge the opening was made smaller by lowering it, and some of the old piers were left standing. During an overflow of the main stream, the ice and snow was raised up by the increased volume of water so as to obstruct the water and cause it to back up and commingle with the overflow from the other stream and back into plaintiff's house, which was between the two streams. Before the bridge was reconstructed, the opening was sufficient to pass the water, even in flood time. *Held*, that the mere fact that the flood water from the other stream was turned back before reaching the bridged stream did not affect defendant's liability under the rule relating to surface waters; defendant's obstruction of the natural outlet of such waters having caused the injury.

   [Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 171.*]

   McLennan, P. J., dissenting.

Appeal from Special Term, Chatauqua County.

Action by Esther A. Wilson against the Pennsylvania Railroad Company and another.   From a judgment for plaintiff, defendants appeal. Affirmed.

The action is brought to recover damages for injury and destruction of the plaintiff's household goods, resulting from the flooding of her house, caused, as the plaintiff claims, through the negligence of the defendants in constructing

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a bridge over a stream with insufficient openings to permit the passage of the water. The action was referred to a referee, who decided in favor of the plaintiff, and the defendants appeal from the judgment entered upon the report of the referee.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Evan Hollister, for appellant New York, C. & St. L. R. Co.
Frank Rumsey, for appellant Pennsylvania R. Co.
George E. Towne, for respondent.

KRUSE, J. Dead creek, over which the railroad tracks are carried by the bridge in question, is a branch of Cattaraugus creek, joining the latter, north of the railroads and near the mouth of Cattaraugus creek, which flows into Lake Erie. The general course of the streams is northerly, and the tracks run easterly and westerly, not far from the lake shore, and cross both streams. The tracks are laid on a solid embankment of earth five to six feet above the level of the surrounding country, except the creek openings, which are a little less than a mile apart and are bridged. The natural slope of the land is from Cattaraugus creek to Dead creek; the track at the latter creek being about seven feet lower than at the former. The village of Irving, in which the plaintiff resided, lies between the two creeks and south of the railroads. The flooded house where she lived is in the western part of the village and immediately south of the tracks.

When the railroads were originally constructed, the tracks were carried over Dead creek on a trestle about 300 or 400 feet long, which seems to have been sufficient to take care of the waters, even in times of flood; but in 1903 a girder bridge, about 240 feet long, was constructed, to take the place of the trestle work, and the opening through which the water had theretofore been accustomed to flow was contracted. The bottom of the bridge was not only lower than the trestle work, but the piles which had constituted a part of the trestle were cut off, so that they projected above the surface, and other obstructions were permitted in the opening, lessening its capacity as well as readily affording lodgment for ice and other drift. The present opening is adequate in ordinary times, but floods are not infrequent, and the Cattaraugus creek has always, as far back as the witnesses could remember, periodically overflowed its banks southeasterly from the village. The overflow has been as often as three times in five years. The course of the flood waters has been toward and into Dead creek, following the natural slope of the land and depressions and channels made by the flood waters.

On the 7th day of February, 1904, such a flood occurred. In the forenoon of that day the ice and snow in Dead creek was raised up by the water, floated, and stopped at the bridge. The waters, being obstructed, flooded back, overflowed, and met and commingled with the overflow waters coming from Cattaraugus creek. The water rose very rapidly, covering the entire lowlands, and eventually reached the plaintiff's house, covering the lower floor to a depth of three or four feet. The water was so high that it ran over the railroad embankment for a distance easterly and westerly of the Dead creek bridge, of a half

mile or more, covering the tracks from eight inches to a foot in depth, and flowing as over a dam, so it is described; the waters rising three feet higher than ever before. Ultimately, the water found its way under the ice jam and undermined one of the piers, so that one end of the bridge dropped several feet. Before this, while the trestle was in use, the overflows from Cattaraugus creek had always escaped by way of the channel of Dead creek, under the trestle.

The referee finds that the defendants were negligent in constructing the bridge, and in neglecting to provide a sufficient opening for the waters at that point, and awarded to the plaintiff the damages sustained thereby.

That the backing up of the water on this occasion and the damage done the plaintiff by flooding her house was caused by the insufficient opening and obstructed channel at the bridge is supported by the evidence. It also seems clear that this result ought reasonably to have been anticipated and foreseen by the defendants, and guarded against in the exercise of reasonable care, caution, and foresight.

The claim on the part of the defendants that this branch stream is not a natural water course is not, as it seems to me, well founded. Clearly, where this obstruction was built, there was a natural water course, whatever may be said of the easterly branch, which unites with Rose creek at some distance southerly from the railroads, and forms the stream in question. That part of the stream known as Rose creek, and Dead creek from where Rose creek flows into it, down to the bridge and below, is a living stream, and, I think, a natural water course within the legal meaning of that term.

It is contended on the part of the defendants, however, that the water which did the harm was surface water, for which they were not obliged to provide. To support their contention, the case of Erwin v. Erie R. R. Co., 98 App. Div. 402, 90 N. Y. Supp. 315, affirmed 186 N. Y. 550, 79 N. E. 1104, is cited, with others. The railroad was held not liable, in that case, for the consequences of building an embankment preventing flood waters rejoining the river at a point below where they overflowed, thus holding them back on low ground. The question there was whether there was a natural water course across the lowlands where the embankment was built, and which was intercepted by it, and it was held, under the facts of that case, that there was no water course there. That is not this case. Here there was a natural water course, which was obstructed.

It was well known when the bridge was · constructed that these floods occurred periodically, that this stream would be swollen by an overflow from the main stream, and the defendants were required to so construct the bridge, and leave an opening of sufficient capacity, not only to meet the ordinary conditions and requirements, but such as might reasonably be anticipated would occur by floods, although infrequent. Bellinger v. N. Y. C. & H. R. R. R. Co., 23 N. Y. 42; Higgins v. New York, L. E. & W. R. R. Co., 78 Hun, 567, 29 N. Y. Supp. 563. This flood does not seem to have been unusual, except as it was made so by this bridge and the obstruction in the channel of the stream.

The question here is not that of fighting surface or flood water by the defendants, as seems to be argued in their behalf. Certainly, narrowing the channel and lessening the capacity of the opening was not done for that purpose. It is rather that of obstructing a natural water course, and turning aside and preventing the waters from flowing therein, as was natural and usual in flood times. Merely because the flood water from Cattaraugus creek was set back and turned aside, as it was, before reaching its natural outlet channel, does not absolve the defendants from liability, under the rules relating to surface water, if it was caused, as we think the evidence shows it was, by the defendants' wrongful act in obstructing the stream which was its natural outlet.

We are well aware that the decisions of the courts of the various states are not in entire accord upon this question, as will be seen by a reference to the authorities cited in Farnham on Waters & Water Rights, vol. 3, §§ 878 to 880; but it seems to us that, under the facts and circumstances of this case, the defendants are clearly liable.

The judgment should therefore be affirmed, with costs. All concur, except McLENNAN, P. J., who dissents.

McLENNAN, P. J. (dissenting). I dissent on the ground that the defendants are not required to provide for taking care of surface water which may accumulate upon the premises adjacent to its right of way. This proposition, as I understand it, was expressly held in the case of Erwin v. Erie R. R. Co., 98 App. Div. 402, 90 N. Y. Supp. 315; affirmed with opinion in the Court of Appeals, 186 N. Y. 550, 79 N. E. 1104. In view of that decision, I fail to see how the conclusion can be reached that the appellants are liable for the damages which the respondent has sustained. Ample provision was made by the defendants for taking care of the waters of Dead creek and Rose creek; but it appears that a mile away the banks of Cattaraugus creek gave away, came down over meadow and flat lands intervening, finally uniting with the waters of Dead creek and Rose creek, and making such volume as could not be accommodated in passage under the bridge erected by the defendants. My own notion is that a railroad corporation, or other quasi public servant, should be required to make provision in the construction of its railroad by which not only the waters of a stream, but also the surface waters which may lead into such stream, should be provided for by such corporation; but it seems that it has been repeatedly held that such corporation may construct its road in such manner as to make a swamp of the lands adjacent to it, provided there is no natural waterway defined, and the natural drainage of which such railroad, by its embankment, has obstructed. As I understand the law, as settled by the courts of this state, it is to the effect that a railroad corporation, if there are no defined water courses above its embankment, may convert the premises above, naturally drained towards and against such embankment, into a useless swamp, and that such railroad company incurs no liability because of the damages sustained by the adjacent landowners.

I appreciate that the question here involved is not easy of solution. The watershed of a lot belonging to my adjoining neighbor descends

towards my lot, yet, notwithstanding, concededly I have a right to erect a stone or brick wall which will effectually prevent the surface water from my neighbor's lot flowing onto mine and making a quagmire of his premises. I understand, under the authorities, that this may be legally done. If so, I fail to perceive how it can be held in the case at bar that, by reason of the overflow of a creek a mile away, which overflow passes over meadow and flat lands without any sign of water course until they join Dead creek and Rose creek, adjacent to the lands of the defendants, it should be required to be provided for by the defendants. Under the authorities, it seems to me that, except for Dead creek and Rose creek, all the rest of the country being meadow or flat lands, the waters coming over it would clearly be surface water and for which the defendants were under no obligation to provide against. It seems to me that it does not change the rule, and that the defendants, having amply provided for the waters of Dead creek and Rose creek, were not required to provide for the surface water which came down over a mile in width of meadow and flat lands, without any sign of a stream or water course, and finally came in and joined with the comparatively little streams known as "Dead creek" and "Rose creek."

I think that the plaintiff in this case should succeed, in equity and upon principle; but it seems to me that recovery is barred by the decisions of the highest court of this state, and therefore I vote for a reversal of the judgment.