NORA COONEY, as Administratrix, etc., of JOHN COONEY, Deceased, Respondent, *v.* NORTHERN CENTRAL RAILWAY COMPANY and THE PENNSYLVANIA RAILROAD COMPANY, Appellants.

Fourth Department, November 14, 1917.

Railroads — liability of railroad for defective condition of highway caused by snow fence erected upon its premises — remedy of users of highway for defective condition thereof.

A railroad company may lawfully erect a fence or any other structure wholly upon its own property, designed to prevent snow from blowing across the highway into a railroad cut, although the effect is to produce snow drifts in the highway, where none of the snow which drifts into the highway comes from the right of way of the railroad.

Hence, although the effect of such a fence is to cause the snow to drift and to a considerable extent obstruct the highway, contributing to the development of pitch holes between the drifts, the railroad company is not liable in damages for injuries sustained by users of the highway, because of the pitch holes.

*It seems*, that the liability to such users, if any, is by the town for failure of its town superintendent to keep the highway safe for public travel.

APPEAL by the defendants, Northern Central Railway Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ontario on the 23d day of February,

1917, upon the verdict of a jury for $7,000, and also from an order entered in said clerk's office on the 6th day of March, 1917, denying defendants' motion for a new trial made upon the minutes.

*Alexander S. Diven,* for the appellants.

*W. Smith O'Brien,* for the respondent.

FOOTE, J.:

Plaintiff's intestate died on January 26, 1915, as a result of injuries received by him on January 6, 1915, by being precipitated to the ground from the top of a load of straw loaded upon a sleigh which he was driving along the highway in the town of Milo in the county of Yates. The accident happened when the forward bobs of the sleigh descended into a pitch hole in the snow in the highway, whereby the sleigh and load of straw were overturned.

Plaintiff, as administrator, has recovered for the death of her intestate, on the ground that the defendant the Northern Central Railway Company about fifteen years prior to the accident, constructed and thereafter until July 29, 1914, maintained a tight board fence upon the south side of its right of way, and that the defendant the Pennsylvania Railroad Company, as lessee, maintained said fence from July 29, 1914, down to the time of the accident. The highway in question runs east and west and adjoins the railroad right of way on the south. The fence is upon the southern margin of the right of way and along the division line between it and the highway. At the point of the accident the highway passes over an elevation and the railway tracks are in a cut from four to six feet deep. In winter the snow was accustomed to drift into this cut, to prevent which the fence was built. It is a tight paneled fence, the boards being nailed to the posts horizontally, and it is between three hundred and fifty and four hundred feet long and about seven feet high. The width of the highway is fifty feet and at the point of the accident the center of the beaten path is twenty-four and one-half feet from the fence. It appeared that prior to the building of the fence the snow did not drift into the highway at this point, but that the effect of the fence is to cause the

snow to drift and to a considerable extent obstruct the highway, contributing to the development of pitch holes between the drifts.

The complaint charged the defendants both with negligence in maintaining this fence and with having created and maintained a nuisance thereby. The question left to the jury was as to whether this fence was a nuisance in that it obstructed the highway by causing an accumulation and piling of snow which but for the fence would not have occurred.

The contention of the defendants is that they may lawfully erect a fence or any other structure wholly upon their own property, without incurring liability for its incidental effect upon the adjoining highway. We think this contention is correct. The precise question presented does not appear to have been decided in any reported case, or to have been treated by any text writer. We think the principle that must control is, however, well settled. The general right of the owner to make such erections as he wishes upon his own property for its beneficial use and enjoyment is not questioned. That railroad companies have this right equally with private owners is also well settled. (*Bennett* v. *Long Island R. R. Co.*, 181 N. Y. 431; *Leffmann* v. *Long Island R. R. Co.*, 120 App. Div. 528; affd., 197 N. Y. 513; *Matter of Grade Crossing Comrs. of Buffalo*, 209 id. 139).

It is also the rule that where the effect of such a structure is to turn the course of surface waters or to prevent surface waters flowing onto the premises from adjoining lands, no liability arises in favor of owners of adjoining lands whose lands may be affected or injured thereby. (1 Reeves Real Prop. § 223; *Goodale* v. *Tuttle*, 29 N. Y. 459; *Barkley* v. *Wilcox*, 86 id. 143; *Erwin* v. *Erie R. R. Co.*, 98 App. Div. 402; affd., 186 N. Y. 550; *Howard* v. *City of Buffalo*, 211 id. 241.)

On principle, the same rule must apply to snow blown about by the winds, which ultimately becomes surface water.

A landowner has at common law the same right to erect barriers to prevent the flow of surface waters onto his lands from the highway as from other lands. (*Inhabitants of Franklin* v. *Fisk*, 95 Mass. 211.)

But it is contended, and the learned trial court has held,

that the right of the landowner to erect structures on his own land adjoining the highway is, in legal effect, limited to such structures as will not result in obstructing or impeding the passage of the highway by producing snow drifts therein. If this is so, it certainly introduces a new rule of limitation upon the use which a landowner may make of his property. The claim is that the landowner thereby himself interferes with the highway and obstructs it. The cases relied upon to sustain that position are *Callanan* v. *Gilman* (107 N. Y. 365); *Wakeman* v. *Wilbur* (147 id. 657); *Walsh* v. *Mead* (8 Hun, 390); *Tremblay* v. *Harmony Mills* (171 N. Y. 598) and *Davis* v. *Niagara Falls Tower Co.* (Id. 336).

These are all cases where the abutting owner had himself placed some obstruction within the lines of the highway or had erected a structure on his own land, the effect of which was to gather together surface waters upon his own land and discharge them into the highway, producing ridges of ice upon the sidewalk, or, as in the *Niagara Falls Tower* case, a structure the effect of which was to cause to drop from his premises into the highway pieces of ice likely to injure travelers or pedestrians. None of them have, as I think, considered the question that is presented here.

It would seem that the railroad companies would have the same right to erect fences and other structures upon their right of way as to raise embankments to carry their tracks although the effect of the embankment would be to cause snow drifts in the adjoining highway. The right is of the same character as that exercised by the farmer who builds his barn upon his own land, but upon the margin of the highway. It may cause drifts in the highway, but it has never, so far as I am aware, been contended that this would subject the farmer to liability for creating a nuisance in the highway. It was not contended at the trial, and is not suggested here, that the defendants were under any statutory or other duty to clear away snow drifts rendering the road impassable where it adjoined their right of way. Hence, the recovery here must be sustained, if at all, upon the broad ground that the erection of a structure within the right of way which prevents the snow from blowing from the highway onto the right of way and thereby produces drifts in the

highway which obstruct it renders the defendants liable to a person injured upon the highway because of these obstructions. All highway fences do tend to produce drifts, except, perhaps, the modern wire fence. In 1908 the Legislature dealt with the question and by section 56 of the Highway Law (Laws of 1909, chap. 30)* authorized the town superintendent to purchase wire for fences and to enter into contracts with the owners of lands lying along the highway to erect wire fences in place of the existing fences which tended to produce snow blockades, thus indicating that the existing farm fences were lawfully maintained, although they did produce snow blockades in the highway.

It is not to be doubted that the railroad companies may lawfully, if, indeed, it is not their duty to, maintain a fence of some kind at the margin of the highway in question. It is their statutory duty to do so, if necessary, to keep cattle and horses off their tracks. The railroad cut comes near to the line of the highway at this point, and but for a fence it might be the source of danger to the traveling public. We think they have also a right to erect a fence designed expressly to prevent snow in winter from blowing across the highway into this railroad cut, although the effect is to produce snow drifts in the highway. A railroad company would not have the right to take snow which had fallen upon its right of way and cast it into the highway, if thereby the highway was obstructed. Such was not the case here. None of the snow which drifted into the highway came from the right of way of defendants. It all came from the other direction. It was brought into the highway or caused to drift therein by the south and southwest winds.

The liability to plaintiff, if any, we think is by the town for the failure of its town superintendent to keep the highway safe for public travel.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

All concurred.

Judgment and order reversed, with costs, and complaint dismissed, with costs.

* See Laws of 1908, chap 330, § 56; Consol. Laws, chap. 25 (Laws of 1909, chap. 30), § 56. — [REP.