KATE E. SMITH, as Administratrix of the Estate of GEORGE R. SMITH, Claimant, *v.* THE STATE OF NEW YORK.

### Claim No. 15582.

(State of New York, Court of Claims, June, 1921.)

*Flooding of lands — cloudburst — when state acquires right by prescription to continue flow of water over lands — claim dismissed.*

CLAIM for the destruction of a dam.

Dunmore, Ferris & Dewey, for claimant.

John H. Clogston, Deputy Attorney-General, for state.

WEBB, J. This claim was made against the state for the destruction of the dam and hydro-electric plant

owned by the claimant and located at Solsville, N. Y., on the 11th day of June, 1917. The damages were alleged to have been caused by the negligent acts of the state in the construction and operation of a section of Chenango canal whereby a large body of water which in its natural state had been tributary to and had flowed into the Chenango river running southerly, had been so diverted as to cause the same or a large portion to run northerly and to be discharged into Oriskany creek near Solsville and adjacent to the mill pond of the claimant.

The Chenango canal was authorized in 1829 and constructed from 1833 to 1840 to facilitate traffic between the cities of Binghamton and Utica. The summit level extended from Solsville on the north to the village of Hamilton on the south, a distance upwards of five miles, which level was fed by various reservoirs. A diverting dam was constructed on the north side of this system in such manner that when the water in the feeder was more than four feet high the excess flowed south into the Chenango river, when less than four feet it supplied the summit level and fed the canal extending north from that level to Utica. When more water was supplied than was taken care of by the intermediate locks, spill-ways and paddle gates were provided. Both these means of disposing of excess water were constructed at Solsville where it was discharged into Oriskany creek.

By chapter 404 of the Laws of 1877 the Chenango canal was abandoned except that portion of it on the summit level. At the north end of that level at Solsville a permanent bulkhead was constructed and that portion of the canal between that point and Utica was completely abandoned but no change was made in the feeder system of the summit level. At the point where this bulkhead was constructed the Chenango canal had formerly crossed Oriskany creek and was carried over by means of an aqueduct. With the construction

of the bulkhead, however, any surplus water in the Chenango canal south of it ran over the spill-way into the creek as theretofore and was thus fed into Smith's mill pond. Soon afterwards the aqueduct itself was abandoned and from that time there was a constant flow of water through the old Chenango canal south of the bulkhead into Smith's mill pond, all of which furnished the power used in generating electricity for claimant's plant.

The canal at the summit level was constructed largely through a swamp and at the time it was built a dam and mill were located at the same place as in 1917. The then owner of the property made claim against the state for damages in that the construction of the canal through his swamp took away the water which had formerly reached his mill pond and thus destroyed his power. An award was made to him upon this ground, but obviously in an amount not deemed adequate by the owner, for soon afterwards the legislature directed a further hearing and an award of nearly $10,000 was made to the owner as recompense for destroying his water power. But after the abandonment of the Chenango canal there was apparently no lack of water to operate the mill, even when Oriskany creek south of the aqueduct was without water in the dry season of the year. In other words apparently the operation of the mill was at times wholly dependent for its supply of water upon the flow from the old Chenango canal.

Upon the trial the state strenuously insisted that there was nothing in the construction of the Chenango canal or the feeder system or in the use of the aqueduct or its abandonment which created any liability for the damages in question. It appeared that prior to the morning of the flood of June 12, 1917, there had been a considerable period of wet weather which had filled the ground with water. Between one and two o'clock in the morning of that day there was a cloudburst over

the entire area covered by the feeder system. According to the testimony of the oldest inhabitants nothing so severe had ever been experienced there. The canal followed the bed of Oriskany creek a good part of the distance and high hills bounded it much of the way. The water literally poured from these hills into the creek, washed out the canal banks and ran into the bed of the old Chenango. canal to such an extent as to create what witnesses called a lake, roads were washed out, a tree fifty to sixty feet long was carried away, a horse was carried from his feet by high water in the highway, timbers, logs, trees, bridges, fences, chicken-coops and debris lined the path of the flood. At three forty-five A. M. the flood was at its highest point and by four forty-five claimant's dam went out and was entirely gone.

At one A. M. the caretaker at the plant went home. The water at that time was no higher than usual and no rain was falling. It appeared by the testimony that it would take four and a half hours for flood waters to traverse the distance from the diversion dam at the north end of the feeder system to Smith's mill-pond. Inasmuch as the whole feeder system was intact, and in full operation the state urged that claimant's damages were attributable to a cloud burst against which the state was not an insurer and not to any negligence in the construction or operation of the canal or feeder system, and that such a torrent of water, flotsam, and debris would have wrecked the dam irrespective of the canal. I believe such to be the case and in our findings we have found that the claimant has failed to show that his damage was caused by any negligence of the state, which fact in and of itself would compel the dismissal of this claim.

There is, however, a further reason for exempting the state from any liability for the damages claimed to have been suffered by this claimant, which is as follows:

It appeared that from the time when the Chenango canal was put into operation in 1840 down to 1877 when the same was abandoned, the excess waters fed into the canal from the summit level were discharged into Oriskany creek right at Smith's mill-pond; and from the time when the canal was abandoned in 1877 down to the time of the flood in 1917 all the waters coming down from that canal south of Solsville were turned into Oriskany creek and found their outlet in Smith's pond. So for a period of seventy years the owners of this property could see from their mill at Solsville the waters discharging from the canal upon their property. Winter and summer alike, in dry and wet seasons, the flow of water was continuous, undisturbed and hostile. The state was exercising an assumed right to discharge its waters in that manner for upwards of seventy-five years. For twenty-five years the claimant's decedent had depended upon that water for the operation of his industry at that point. Did the legal effect of this assumed right of the state to dispose of its waters for seventy-five years result in title by prescription? Mr. Waterman in his work upon trespass on real estate says (Vol. 2, § 631): "An uninterrupted user of an incorporeal hereditament under a claim of right for twenty years, as between parties under no disability, with the knowledge and without interruption from those adversely interested, affords conclusive evidence of a grant or right, as the case may be."

Chancellor Kent in his commentaries states that title by prescription involves a user that is hostile and continuous for twenty years and upwards and this seems to be the accepted definition. The case of *Erwin* v. *Erie Railroad Company*, 98 App. Div. 402; affd., 186 N. Y. 550, applied the doctrine to a state of facts less clear than the one under consideration and the court said respecting a continuous flow of water upon the plaintiff's land: " That act constituted an interference

with the rights of the owner if any there were and it was an open notorious assertion of dominion in hostility to her claim. Actual damages need not follow the usurpation immediately to make a cause of action. If the natural result of the dispossession was injury to the plaintiff's property she could have sued at once to enjoin the continuance of the obstruction. But in this case the proof indisputably shows that water overflowed and ran along this depression and deluged the farm by reason of the embankment more than thirty-five years before this action was commenced. Clearly it is too late for her now to maintain her cause of action for damages.''

These words might have been applied with propriety to the case in hand. For seventy-five years the waters of the Chenango canal had been flowing upon the lands of the claimant and his predecessors in title with continued regularity and in greater or less volume, and for twenty-five years those waters had been an essential element in the operation of his water power. Having discharged canal waters into Oriskany creek for that length of time it seems to me the state's right to continue that flow was acquired by prescription, and such title of the state was not affected by the fact that after its title by prescription had been perfected an excess of water subjected it to liability arising from that cause. For these reasons I advise that the claim be dismissed.

ACKERSON, P. J., concurs.

Claim dismissed.