## LONGFELLOW versus QUIMBY & al.

The statute of 1821, chap. 118, authorized the establishment of highways in unincorporated townships, at the expense of the proprietors.

It also authorized a sale of the land, by the county treasurer, at auction, (after certain prescribed advertisements of the time and place of the sale had been given,) to raise money for paying the assessment.

The recitals in the treasurer's deed are not conclusive, as evidence of the facts therein stated.

A sale, made under such authority, was not rendered void by the fact, that it did not bring price enough to pay the whole assessment; nor by the fact that the assessing officers, in computing the number of acres to be assessed, excluded that portion of the tract, which was covered by water.

In trespass by a proprietor of land for cutting and carrying away growing trees, *Held,* that the plaintiff should recover for the value of the trees, and for the injury occasioned by cutting them prematurely, and for the injury done to the land, with damages at the rate of six per cent. per annum.

On REPORT from *Nisi Prius,* SHEPLEY, C. J. presiding.

TRESPASS for cutting and taking away trees from the plaintiff's land, in townships numbered six and seven.

The County Commissioners had located and established a highway through the townships. Afterwards, in 1840, for the purpose of opening and making the highway, they assessed upon a described part of No. 6, estimated to contain 13.000 acres, exclusive of water and of land reserved by the State, the sum of $1820, being fourteen cents per acre; and upon No. 7, estimated to contain 29,000 acres, exclusive of water and of land reserved by the State, the sum of $4350, being fifteen cents per acre, to be paid by the proprietors, and ordered the county treasurer " to collect said assessments according to law."

The treasurer, after advertising as the law prescribed, sold the lands at public auction to the plaintiff. His advertisements stated that the sale was to be at *eleven* o'clock. His deed to the purchaser recited that the land was advertised for sale at *ten* o'clock, and that he sold them at that time *after waiting two hours.* Neither of the tracts was sold for enough to pay the assessment upon it.

The defendants afterwards cut and carried away the trees, for which this suit is brought.

. A trial was had in 1848, but the verdict, then rendered, was set aside. 29 Maine, 196.

On again coming up for trial, several objections were taken to the plaintiff's title to the land. Some of them were founded upon the alleged illegality of the County Commissioners' assessment. The other objections are stated in the opinion of the Court. After the introduction of the testimony, the case was withdrawn from the jury, and submitted to the Court.

. *J. Granger,* for the plaintiff.

. *Washburn* and *W. Fessenden,* for the defendants.

SHEPLEY, C. J. — When this case was before it at a former term, the Court decided, that the proceedings of the County Commissioners in laying out the highway and in assessing the taxes were to be regarded as valid, until quashed upon a writ of· *certiorari.* 29 Maine, 196. The objections now made to those proceedings, cannot therefore prevent a recovery by the plaintiff.

Other objections not then presented or considered, are now made to the proceedings of the county treasurer to collect the taxes by a sale of the lands.

1. It is insisted that he could not lawfully sell them without obtaining for them the whole amount of the taxes assessed upon them.

The statute then in force, chap. 118, sect. 24, provided that so much of the lands should be sold at public vendue as might be necessary to pay the taxes and expenses of sale ; and that the money so raised should be applied to open and make the highway ; and it contained no provision that the lands should not be sold, unless the whole amount assessed upon them could thereby be collected.

. The treasurer could not be excused from a performance of his duty to collect the taxes or as much of them as he could,

if the lands would not sell for an amount sufficient to pay the whole of the taxes.

2. The second objection is, that the lands, without including those covered by water, could not be legally assessed and sold.

Whether the assessment was correctly made or not upon the lands not covered by water, is not a subject for consideration in this case. The treasurer sold all that were assessed.

3. The third is, that the lands were advertised for sale on October 9, at eleven o'clock forenoon, and that the sale was made at ten o'clock of the same day, after waiting two hours.

The treasurer recites in his deed to the purchaser, that they were advertised for sale at ten o'clock, and that he sold them at that time, after waiting two hours. The meaning is, that he waited two hours after ten o'clock, and then sold them.

The recital in his deeds was evidently a mistake. Such recitals are not conclusive evidence of the facts therein stated. Nor will the sale be illegal by such mis-recital, if it appear, that the sale was in fact made at the time and place appointed. The statute did not require him to wait two hours, and it appears that he sold at twelve o'clock, and as he was there two hours before that time, he appears to have been there at the time appointed for the sale, and for the purpose of making it. The statute does not require, that the sale should take place during the hour appointed. It may happen, that the treasurer may be employed in receiving part of the taxes, and that the biddings may be prolonged to a later time. The recitals in the deeds do not prove that the sales were not legally made.

4. Another objection is, that the plaintiff acquired no seizin or possession by his conveyances from the treasurer; and the case of *Stubbs* v. *Page*, 2 Greenl. 378, is relied upon as authority. That case decides, that a collector's deed, void as a conveyance, gave no seizin or possession; not that such would be the effect of a deed conveying the land.

5. It is objected that the plaintiff cannot recover for any

trespass committed on lots in township numbered seven, excepting lot numbered seventy-eight, because he was at that time a tenant in common with Hutchinson and others, under whose license it is admitted, that the defendants cut the trees. A decision was made in the former opinion against the validity of this objection.

The plaintiff will be entitled to recover compensation for the injuries occasioned by the acts of the defendants upon his lands to be ascertained by an estimate of the value of the trees cut and carried away, and of the injury, if any, occasioned by cutting them prematurely, and of the injury, if any, done to the land ; and on the amount thus ascertained for being deprived of the use of his property, may be added an amount equal to six per cent. per annum, from the time of taking the property to the time of judgment.

*Defendants defaulted.*