*492
 
 Earl, J.
 

 The plaintiff was the owner of four adjoining lots on the westerly side of West Fifty-third street in the city of Hew York. He became the owner of three of them in 1866, and of the other in 1868, and he continued to own them until after the commencement of this action in February, 1884. The elevated railway of the defendants was constructed through Fifty-third street in front of these lots in 1878, and was thereafter maintained and operated. The plaintiff used apart of his lots for a carpenter shop and the remainder as a lumber yard. This action was commenced to recover damages occasioned to the lots by the construction and operation of the railway, and the only question which it is important for us now to determine relates to the rule of damages.
 

 When the defendant began to construct its railway in front of the plaintiff’s lots he could have commenced an action in equity against it and restrained it until it had made compensation to him for the rights and easements which it took from him, or until it acquired them by condemnation proceedings.
 
 Story
 
 v.
 
 The Elevated Railway Co.,
 
 90 N. Y., 122. In that way he would, at least in the theory of the law, have been indemnified for all the damages he would suffer by reason of the construction of the railway. Instead of taking his remedy by an equitable action at that time he could have taken it at any time afterward during his ownership of the lots with the same result.
 

 He was not, however, confined to his remedy by such an action. He could suffer the railway to be constructed and then bring successive actions to recover damages to his lots, caused by the construction, maintenance and operation of the railway. In such an action he would recover his damages to the commencement of the action, and the action would be governed by the principles laid down in
 
 Uline
 
 v.
 
 N. Y. Central R. R. Co.,
 
 101 N. Y., 98.
 

 In such an action the plaintiff cannot recover for the permanent-diminution in the value of his lots. He can only recover the damages he sustains from day to day, or from month to month or from year to year, in the use of his lots, and the question to be determined in such an action is how much has the rental or usable value of the lots been diminished by the construction, maintenance and operation of the railway ? As a basis for estimating the damages, the lots must be taken as they are used during the time embraced in the action, and the plaintiff’s recovery must be confined to the diminished rental or usable value of the lots just as they were. He was in no way prevented from putting his lots to any use he wished. He had the right, acting reasonably, not wantonly or rashly, to put upon them any structures which he deemed most to his advantage; and at .any and all times, until the railway company acquired as against him the right to maintain and operate its road in Fifty-third street he had the right to recover the diminished rental value of his lots occasioned to them just as they were by the maintenance and operation of the road. But he could not be permitted to prove or allowed to recover such damages as he might have sustained if he had put his lots to other uses or placed upon them other structures. Such damages
 
 *493
 
 would be purely speculative and contingent. The plaintiff had owned these lots for about twelve years before the railway was constructed without making any substantial improvements upon them, and they remained in the same condition down to the commencement of the action. It appears that at some time he made plans for the erection of dwelling houses upon the lots; but whether he ever intended to build, or would have built the houses, is mere matter of conjecture. Upon the trial he was permitted to prove what it would have cost to erect the dwelling houses upon the lots, and what they would have rented for after they were constructed, and also to give evidence of the amount for which they would have rented if the railroad had not been constructed; and the jury evidently took this evidence into consideration in fixing the amount of damages which they awarded the plaintiff.’ There can be no certainty that the plaintiff would ever have erected dwelling houses upon the lots, and there could be no certainty as to the rents which could have been obtained from them, either with or without the railroad in the street, and the defendant was permitted by the rule adopted in the court below to have all the advantages which he could derive from keeping his lots substantially vacant and ready to sell as such, and, at the same time, to have all the advantages, without the investment of any money and without any risk, which he could have derived from their improved condition. He was simply entitled to the damages caused to him in the use of his lots from the defendant’s interference with his easements of light, air and access, and such damages are necessarily, and from the very nature of the case, such only as flowed from the interference with such easements during the time covered by the action. If he desired a more ample indemnity for the injury he suffered from the railway in front of his lots, he should, by an equitable action, have compelled the defendant, either by agreement with him to pay his damages, or to acquire the right by condemnation proceedings to interfere with and take his easements. Any other rule would open upon the trial in every case like this an inquiry into all the possible uses to which the abutting owner might put his premises, and damages, instead of being awarded upon any certain or probable basis, would rest mainly upon conjecture and speculation. Adequate sanction for these views is found in the following authorities:
 
 Greene
 
 v.
 
 N. Y. Central R. R. Co.,
 
 12 Abb. N. C., 124;
 
 Colrick
 
 v.
 
 Swinburne,
 
 105 N. Y., 503; 8 N. Y. State Rep., 172;
 
 Wheelock
 
 v. Noonan, 108 id., 179; 13 N. Y. State Rep., 110;
 
 Hatfield
 
 v.
 
 Central R. R. Co.,
 
 33 N. J. Law, 251;
 
 Dorlan
 
 v.
 
 The R. R. Co.,
 
 46 Pa., 520.
 

 The rule of damages as thus laid down was violated by many rulings upon the trial of this action, and a new trial must, therefore, be ordered, costs to abide the event.
 

 All concur.