(65 Misc. Rep. 240.) ·

## STEVENS v. STATE.

(Court of Claims of New York.' December, 1909.)

CANALS (§ 18*)—SEEPAGE OF WATER FROM CANAL—DAMAGES.

One suffering reparable damage from the seepage of water from a state canal into his cellar may recover for the costs of repairs and loss of rentals, but cannot, in addition thereto, recover for diminution in value of the premises, which he might have prevented by proper protection of the cellar.

[Ed. Note.—For other cases, see Canals, Cent. Dig. § 24; Dec. Dig. § 18.*]

Claim by Charles Stevens against the State for damages sustained by the seepage of water from a canal. Judgment for claimant.

George T. Davis, for claimant.

Edward R. O'Malley, Atty. Gen., for the State.

RODENBECK, J. The claimant owns property on the north side of the Black River Canal, consisting of a single and double frame house. Just west of the property is lock No. 2. There is a waste weir between the lock and the claimant's premises, used for the purpose of discharging waste water from the canal. It is claimed that the water seeped through the bank of the canal into the cellars of the two houses, and also backed up through a box drain constructed by the state which connects the cellars with the waste weir. It appeared on the trial that whenever the lock was opened the water from the waste weir backed into the cellars, and with the water which seeped through the bank made the cellars damp and filled them partially with water. Previous recoveries have been had for the same property, and efforts have been made by the state and the owner of the property to obviate further damages.

There is evidence that the state was negligent and that the claimant has suffered damages as a result thereof; and it would be unnecessary to discuss the case further, but for the fact that the claimant insists that he is entitled to damages due to the diminution in the value of his property as well as the cost of making repairs and the loss in rentals. The question of the measure of damages arises in this court so frequently, and the rule varies so much according to the facts in each case, that it has been deemed wise to consider the subject somewhat at length and to review the more important cases bearing upon the question, so that there may be a guide in the future for this court and litigants to determine the correct rule to adopt in each case.

The claimant is clearly entitled to any reasonable expenditures made by him to put the property in a tenantable condition. Indeed, the first duty of a person whose property has been damaged by seepage or overflow from the canal is to repair the damages, if the damages are not too great for reparation, and such a course would remedy the injury and reduce the damages. He cannot sit by idly and allow his property to go to ruin, and expect to recover the damages due to his inactivity. Each case in this respect must, of course, rest upon its own

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

facts; but, where reparation is the ordinary way of remedying the injury, the first duty of the owner of the property affected by seepage or overflow from the canal is to put his property so far as possible in its former condition. This rule applies whether the property is vacant or is built upon, and without regard to the use to which it is being put. If the property is a farm, it is the duty of the owner to drain the land, if possible, and restore it to its former condition so far as practicable. If fences have been injured or destroyed, they should be repaired or replaced. If ditches have been filled, they should be cleaned. Nothing unreasonable is required, but anything that could reasonably be expected to prevent further damages should be done. If the premises consist of improved property, upon which a dwelling or other structure has been erected, necessary repairs should be made to put the property in its former condition, if the injury is not so extensive as to amount to a destruction of the property, so that reparation would be an unreasonable course to pursue. If the injury can be lessened by cementing the walls of the foundation, it is the duty of the owner of the property to make such efforts to reduce the damages. If plaster has been dampened, and the interior of the building has been affected, these repairs should be made, so that the property may be used as theretofore. The owner of improved property will not be permitted to allow it to remain in an untenantable condition, and then claim a loss of rents for the entire period of vacancy; for there may be causes beside the condition of the house which affected its rental value.

It must not be understood from what has been said that reparation must be resorted to in all cases, without regard to the extent of the injury, for the damage may be so great as to amount to a practical destruction of the property, in which case, being an action for damages, and not for equitable relief, the depreciation in the value of the property down to the time of the filing of the claim is the true rule for measuring the extent of the injury. The claimant in this case, therefore, is entitled to such reasonable expenditures as were made by him to restore his premises to their former condition and to obviate a continuance of the damages. Upon this item Judge Andrews said in Slavin v. State, 152 N. Y. 48, 46 N. E. 321:

"Where the injury is to a building, and is one which admits of reparation at a reasonable cost, and this would be the ordinary method of remedying the injury, the cost of the reparation would generally measure the depreciation and the indemnity to which the owner would be entitled."

See, also, Connor v. State, 152 N. Y. 51, 46 N. E. 1145; Sayre v. State, 123 N. Y. 291, 25 N. E. 163.

The second item is for loss of rent, and is a proper item to allow where the owner has made reasonable efforts to put his property in a tenantable condition and secure tenants therefor. The fact that the property has been vacant is not of itself sufficient to charge the state with loss of rents, for, as suggested, the loss of rent may be due to other causes. There may be a want of demand for tenantable property in that locality and, even if the property were in a tenantable condition, it might still have been vacant. The rule for measuring the loss of rent is the difference between the rental value of the property be-

fore the occurrence of the injury and its rental value during the period for which the damages are recoverable. The item, therefore, in the claim for loss of rent, so far as borne out by the evidence, should be allowed. Upon this point Judge Andrews said, in Slavin v. State, supra, after stating that the cost of reparation may be allowed:

"In addition, he would be entitled to recover any loss in rental value, if any, during such reasonable time as would be required to make repairs." Page 48 of 152 N. (Y., page 321 of 46 N. E.

In Connor v. State, 152 N. Y. 49, 51, 46 N. E. 1145, Judge Gray said:

"We think that the claimant was entitled to recover, not only for the actual loss of rental value, but for the expense necessary to repair the damages occasioned to the building by the water."

There remains for consideration the item of permanent depreciation of the property. Judge Andrews said, in Slavin v. State, supra:

"The ordinary rule of damages in case of an unlawful injury to real property is the depreciation in value caused thereby." Page 48 of 152 N. Y., page 321 of 46 N. E.

This is undoubtedly the general rule, but it is not the only rule that is permissible. There are many cases where the damages can only be measured adequately by the application of this rule; but there are some cases where the market value of the thing removed from the real property, or the cost of restoration, or the rental value, or the cost of restoration and the rental value, are the measure of damages. The rule applicable varies according to the nature of each case and the extent of the damages.

Coal, for instance, furnishes an illustration of the rule making the value of the thing separated from the realty, although once a part of it, the measure of damages, where it has a value after removal and the land has sustained no injury because of it. Dwight v. Elmira, Cortland & Northern R. R. Co., 132 N. Y. 202, 30 N. E. 398, 15 L. R. A. 612, 28 Am. St. Rep. 563, citing Sedgwick on Damages (8th Ed.) vol. 3, p. 48; Sutherland on Damages, vol. 3, p. 374; American & English Ency. of Law, vol. 5, p. 36, note 2; Stockbridge Iron Co. v. Cone Iron Works, 102 Mass. 80; Oak Ridge Coal Co. v. Rogers, 108 Pa. 147–152; Dougherty v. Chestnutt, 86 Tenn. 1, 5 S. W. 444; Coleman's Appeal, 62 Pa. 252; Ross v. Scott, 15 Lea (Tenn.) 479–488; Forsyth v. Wells, 41 Pa. 291, 80 Am. Dec. 617; Chamberlin v. Collinson, 45 Iowa, 429; Morgan v. Powell, 3 Adol. & Ellis (N. S.), 278; Martin v. Porter, 5 M. & W. 351.

The rule making the market value of the thing removed the measure of damages is also applicable to nursery trees grown for market, because they have a value for transplanting. The soil is not damaged by their removal. and their market value sufficiently furnishes the measure of damages. Dwight v. Elmira, Cortland & Northern R. R. Co., supra, citing Sedgwick on Damages (8th Ed.) vol. 3, p. 48; Birket v. Williams, 30 Ill. App. 451.

The cost of restoration was applied as the proper measure of damages where a sidewalk was injured by the piling of paving stones

thereon. Parish v. Baird, 160 N. Y. 307, 54 N. E. 725. In that case Judge O'Brien said:

"The measure of damages for an injury of this character is the cost to the owner of the building or restoring the walk to its original condition, and proof of that fact was properly received. Hartshorn v. Chaddock, 135 N. Y. 116 [31 N. E. 997, 17 L. R. A. 426]; Sutherland on Damages (1883) vol. 3, p. 373."

The diminished rental value was taken as the proper measure of damages in a case where the water of a spring was diverted by an upper riparian owner, whereby a lower riparian owner was deprived of the use of the water on his premises. Colrick v. Swinburne, 105 N. Y. 503, 12 N. E. 427. Judge Andrews said in that case:

"The proper rule of damages, under the circumstances, was the diminished rental value of the tannery premises for the purpose of that business during the period of diversion. The rental value of land is a fact ascertainable with reasonable certainty, and is the basis upon which damages are frequently awarded. Cassidy v. Le Fevre, 45 N. Y. 562; Francis v. Schoellkopf, 53 N. Y. 152."

Where a nuisance was maintained which rendered the premises of another disagreeable and uncomfortable, the proper measure of damages was held to be the difference in the rental value free from the effects of the nuisance and subject to it. Francis v. Schoellkopf, 53 N. Y. 152.

In Reisert v. City of New York, 69 App. Div. 302, 74 N. Y. Supp. 673, the city, by means of driven wells and pumps located upon its own land, removed the water appurtenant to adjoining premises and sold the water to its inhabitants. The owner was held to be entitled to maintain successive actions at law to recover damages to be measured by the difference in the rental value.

In Tallman v. Metropolitan Elevated R. R. Co., 121 N. Y. 119, 124, 23 N. E. 1134, 8 L. R. A. 173, an action at law was brought to recover damages resulting to the plaintiff's premises from the construction and operation of an elevated railroad. Upon the rule of damages Judge Earl said:

"He can only recover the damages he sustains from day to day, or from month to month, or from year to year, in the use of his lots; and the question to be determined in such an action is, how much has the rental value or usable value of the lots been diminished by the construction, maintenance, and operation of the railway?"

The case of Uline v. N. Y. C. & H. R. R. R. Co., 101 N. Y. 98, 123, 4 N. E. 536, 550, 54 Am. Rep. 661, contains an interesting discussion by Judge Earl of the rule of damages where a railroad is unlawfully constructed in a street. He collates and discusses the subject of the damages recoverable in an action for damages in such cases and holds that permanent damages are not recoverable, but simply the damages sustained up to the commencement of the action. The remedies of the adjacent owner are threefold:

"He may sue and recover his damages as often as he chooses, once a year or once in six years, and have successive recoveries for damages. He may enjoin the operation of the railroad and compel the abatement of the nuisance by an action in equity; and where his premises have been exclusively

appropriated, or where a highway, in the soil of which he has title, has been exclusively appropriated by a railroad, he may undoubtedly maintain an action of ejectment."

Sayre v. State, 123 N. Y. 291, 25 N. E. 163, was a claim for flooding of claimant's farm, caused by the defective construction by the state of its canal embankment. The award of the Board of Claims was modified, so as to allow the claimant the full rental value of the land flooded and the total cost to the claimant of restoring his land to the condition in which it was before the flooding. This included the item for removing earth thrown out in the construction of the state ditch and an item for the expense of reclaiming the land and putting it in a condition for farming purposes.

The same rule was applied in the case of Jutte v. Hughes, 67 N. Y. 267, where, by reason of the failure of defendant to keep the drains upon his premises in proper repair, the water and filth therefrom flowed upon plaintiff's premises adjoining and into the cellars of his houses, rendering them unfit for use, interfering with the use of the premises and with the letting thereof, and injuring the walls, etc. The trial court excluded evidence of loss of rents in consequence of the flow of the water into the cellars. This was held to be erroneous. The trial court confined the damages to injuries done to the walls and cellars. This was held to be erroneous; and it was held that the plaintiff was entitled to recover expenses in plumbing and fixing the sewers and other expenses which would be required to prevent further injuries from the flow of the water and also such injuries as resulted from the stench. The court in this case applied the rule that the plaintiff was entitled to recover all expenses incident to the restoration of his premises and the loss in rental values.

The diminished value of the property, as shown by its value before and after the injury, was applied in the case of Chase v. N. Y. C. R. R. Co., 24 Barb. 273. The action was brought to recover damages for injuries done to the plaintiff's house, grounds, fruit trees, etc., by water alleged to have been turned upon the plaintiff's premises in constructing a railroad. Mullett, J., said:

"The court, among other things, charged the jury that the rule of damages in this class of cases was the difference between the value of the plaintiff's premises before the injury happened and the value immediately after the injury, taking into the account only the damages which had resulted from the defendant's acts. To this part of the charge the defendant's counsel excepted. This part of the charge, as a general proposition, is unexceptionable. It called upon the jury to decide, in the most practicable way they could, the real injury done to the plaintiff's property by the conduct of the defendants complained of, which was the question before them, but it applied to all the property alleged to have been injured, and all the injury done." Page 275.

The same rule was applied in Higgins v. New York, Lake Erie & Western Railroad Co., 78 Hun, 567, 570, 29 N. Y. Supp. 563, 566, which was an action brought to recover damages to real estate caused by the washing away of soil therefrom, where a railroad company constructed a bridge over a stream with openings of insufficient capacity. Judge Haight clearly states the rule to be the difference in the value of the premises before and after the injury, where the injury is of a permanent nature. He says:

"We are aware that in the case of Hartshorn v. Chaddock, 135 N. Y. 116–122 [31 N. E. 997, 17 L. R. A. 426], the judge delivering the opinion says: 'The rule seems to be that when the reasonable cost of repairing the injury, or, in this·case, the cost of restoring the land to its former condition, is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages; on the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages.' This rule, as it appears to be understood by the appellant's counsel, would establish a double rule of damages, and upon a trial evidence may be given with reference to each, and then the jury adopt that which is the most favorable to the defendant. In such cases a difference in opinion may often occur as to which would be the most favorable, with the result that part of the jurors may base their verdict upon one measure of damages and the rest upon the other. We have not so understood the rule, where the damages are permanent and the restoration impossible. If a man has upon his land a sand bank, and a load of sand is taken therefrom, it being an article of merchandise, his damages doubtless would be the value of the sand taken. If a forest tree was cut therefrom, which had a market value either for lumber or wood, he may be compensated in damages by the awarding to him the value thereof; but if he should have grown fruit trees standing upon his premises, and they should be cut therefrom, the trees would possess no value of consequence after severed from the freehold, and they could not be replaced or repaired, so that the injury would be permanent, and the damages would be the difference in the value of the premises before and after its removal. Dwight v. E., C. & N. R. R. Co., 132 N. Y. 199 [30 N. E. 398, 15 L. R. A. 612, 28 Am. St. Rep. 563]. As we have seen, soil washed away cannot be restored. Other soil may be substituted in its place and the premises partially restored. In such case, it appears to us, the proper measure of damages is the difference in the value before and after the injury. It doubtless would be competent on cross-examination or on the defense to show that the·plaintiff's claim for damages was extravagant, by showing that a substantial restoration could be effected at a trifling cost by filling the place from which earth had been washed away. But this would not operate to change the measures of damages. It would only tend to show that the damages were not as great as claimed."

The same rule was applied where the damage consisted of the destruction of bearing fruit trees. In Dwight v. Elmira, Cortland & Northern R. R. Co., supra, Judge Parker, after laying down the rule that the market value before and after the injury measured the plaintiff's damages, said:

"A party may be content to accept the market value of the thing taken, when he is also entitled to recover for the injury done to the freehold. But if he asserts his right to go beyond the value of the thing taken, or destroyed after severance from the freehold, so as to secure compensation for the damage done to his land because of it, then the measure of damages is the difference in value of the land before and after the injury. In this case the plaintiff was not satisfied with a recovery based on the value of the trees destroyed, after separation from the realty, of which they formed a part, as indeed he should not have been, as such value was little or nothing, so he sought to obtain the loss occasioned to the land by reason of the destruction of an orchard of fruit-bearing trees, which added largely to its productive value. This was his right, but the measure of damages in such a case is, as we have observed, the difference in value of the land, before and after the injury, and as this rule was not followed, but rejected, on the trial, and a method of proving damages adopted, not recognized, nor permitted by the courts, the judgment should be reversed." Page 204 of 132 N. Y., page 399 of 30 N. E. (15 L. R. A. 612, 28 Am. St. Rep. 563).

In Van Deusen v. Young, 29 N. Y. 9, a remainderman claimed damages for an injury to his inheritance by the cutting of timber; and the court said:

"The amount of damages which the plaintiffs were entitled to recover, if entitled to recover any, was the amount the farm was depreciated in value by reason of the injury complained of." Page 35.

The rule was again applied in Argotsinger v. Vines, 82 N. Y. 308, for the destruction of a wood lot. Judge Miller said:

"In an action to recover damages for an injury done to the inheritance, it is held that it is competent for a witness to give his opinion as to the value of the farm with the timber on and the value after it was taken off." Page 313.

The rule was applied to growing timber in Dwight v. Elmira, Cortland & Northern R. R. Co., supra. Judge Parker said:

"This is the rule where growing timber is cut or destroyed. Because not yet fully developed, the owner of the freehold is deprived of the advantage which would accrue to him could the trees remain until fully matured. His damage, therefore, necessarily extends beyond the market value of the trees after separation from the soil, and the difference between the value of the land before and after the injury constitutes the compensation to which he is entitled. Longfellow v. Quimby, 33 Me. 457; Chipman v. Hibberd, 6 Cal. 162; Wallace v. Goodall, 18 N. H. 439–456; Hayes v. C., M. & St. P. R. Co., 45 Minn. 17–20 [47 N. W. 260]." Page 203 of 132 N. Y., page 399 of 30 N. E. (15 L. R. A. 612, 28 Am. St. Rep. 563).

Likewise it was applied to shade trees. The same judge said:

"The same rule prevails as to shade trees, which, although fully developed, may add a further value to the freehold for ornamental purposes, or in furnishing shade for stock."

It was also applied to full grown trees. In the same case Judge Parker said:

"In this state it is settled that even where full-grown timber is cut or destroyed, the damage to the land may also be recovered, and in such cases the measure of damages is the difference in the value of the land before and after the cutting or destruction complained of."

The rule of damages, where an action is brought for equitable relief against an elevated railroad company by the owner of land abutting on a street through which the company's road runs, is the diminution in the value of the property caused by the continued maintenance and operation of the railroad. Tallman v. M. E. R. R. Co., 121 N. Y. 124, 23 N. E. 1134, 8 L. R. A. 173.

In Barrick v. Schifferdecker, 123 N. Y. 52, 25 N. E. 365, the principal question on appeal related to the measure of damages. The parties were adjoining owners, and the defendant, using her building for storage of ice, caused injury to the plaintiff's dwelling house. The melting of the ice occasioned a dampness, which struck through the walls of the dwelling and beyond, and caused an injury to the structure—made it so unsafe and unfit for occupation as to seriously diminish the rental value. The action was brought for equitable relief. The plaintiff asked for an injunction to prevent the continuance of the damages. As in the case at bar, the plaintiff was allowed to prove the loss of rental value, the cost of repairing the injury, and, in addition, the permanent depreciation of the property. The court refused to grant an injunction and gave no equitable relief, so that the plaintiff was remanded to her legal remedy for damages. Judge Finch said

that she could not recover for permanent depreciation, as well as loss· of rental value, and expenses of restoration:

"The rental value to the time of the trial, and in addition the sum necessary to repair plaintiff's house and put it in a condition which would prevent future injury from the same cause were first shown, and their aggregate· would cover the total damages possible to be sustained. When to that. permanent depreciation is added, damages are given for what cannot occur. The cost of prevention and the result of continuance cannot both be given. The· award of the one must necessarily exclude the other." Page 56 of 123 N. Y.,. page 365 of 25 N. E.

Judge O'Brien, in Hartshorn v. Chaddock, 135 N. Y. 116, 31 N. E.. 997, 17 L. R. A. 426, lays down the rule where the damages might be measured either by the cost of restoration or the diminution in the value of the property. The action was one for damages for the willful diversion of the water of a natural stream, whereby it was made to flow upon defendant's land to his damage. In a case where both rules might be applied, the court says that evidence, both of the cost of restoring the land to its former condition and the diminution in its market value, is admissible, but that, after the evidence had been submitted, when the cost of restoration is less than the diminution in the market value, the cost of restoration is the proper measure of damages, to which may be added the loss of the use of the property, but, when the cost of restoration is more than such diminution, the latter is usually the true measure of damages.

"There is no doubt that the diminution in the value of the land is the general rule for measuring the damages in an action for an injury to real property of a permanent character. But this rule is subject to some exceptions, as it would in some cases be incapable of application. If my neighbor remove· from my land, by means of a trespass, a load of sand or gravel, the act might have no appreciable effect upon the value of the property as a whole, and' yet I would be entitled to damages, but in that case they would be measured' by the value of the sand or gravel removed, and the expense of repairing any injury caused by its removal. If buildings are injured, fences or other fixtures removed, the cost of restoring the buildings and the value of the fixtures would generally constitute complete indemnity. In this case the defendant is chargeable with removing a portion of the soil from the plaintiff's· land. Had the quantity removed been one yard, instead of 1,600, no one, it is believed, would then contend that the plaintiff would be restricted to such. damages as he could show by the diminution in value of the land. In this respect, the present is a border case. It is difficult to formulate a general rule that would apply to all cases of injury, such as this, to real property. Had the defendant broken a window in the plaintiff's house, there is no doubt that the cost of completely repairing it would be the proper measure of damages. There are many cases of injury to real estate where the cost of repairing the injury may be the proper measure of damages. The owner is not, in every case of injury to the soil, the trees, or the fixtures, driven to proof of the diminution in value of the estate by reason of the injury, in order to establish his damages. The rule seems to be that when the reasonable cost of repairing the injury, or, as in this case, the cost of restoring the land to its former condition, is less than what is shown to be the diminution in the· market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages. On the other hand, when the· cost of restoring is more than such diminution, the latter is generally the· true measure of damages, the rule of avoidable consequences requiring that. in such a case the plaintiff shall diminish the loss as far as possible. Sedgwick on Damages (8th Ed.) §§ 932, 939, 947; Graessle v. 'Carpenter, 70 Iowa, 166 [30 N. W. 392]; Walters v. Chamberlin, 65 Mich. 333 [32 N. W. 440] ;·

Lentz v. Carnegie, 145 Pa. 612 [23 Atl. 219, 27 Am. St. Rep. 717]: Duffield v. Rosenzweig, 144 Pa. 539 [23 Atl. 4]; Seely v. Alden, 61 Pa. 302 [100 Am. Dec. 642]. The loss of the use of the property in the meantime, in consequence of the injury, has sometimes been allowed, and would seem to be reasonable and just. Therefore proof of the cost of restoring the land to its former condition, and proof of the diminution in the market value of the lot, was in this case alike admissible. There were two methods of measuring the damages depending upon circumstances, and all competent evidence offered should have been received by the referee, and hence it was not error to admit proof of the cost of restoring the soil to the condition it was in before the overflow. Seely v. Alden, supra. But there was no evidence offered by either party in regard to the effect of the injury upon the market value of the lot, and we cannot know from the record whether the diminution in value was more or less than the cost of restoration. The evidence offered, being competent, furnished some proof as a basis for the award of damages, and it cannot be said that the referee's finding, as to the amount of damages sustained, is wholly unsupported by proof. When things attached to the soil, and therefore part of the realty, are injured or destroyed, or some part of the soil itself is carried away, the value of the thing injured or destroyed and the cost of replacing or restoring it, or the expense of restoring the soil to its condition prior to the injury or trespass, may be proved in an action by the owner to recover his damages. When all the evidence is in, it may turn out that the diminution in value of the freehold is the legal measure of damages, but the value of the thing taken or the cost of reparation is none the less evidence upon the question. Barrick v. Schifferdecker, 123 N. Y. 52 [25 N. E. 365]; Argotsinger v. Vines, 82 N. Y. 308." Pages 121–123 of 135 N. Y., page 998 of 31 N. E. (17 L. R. A. 426).

The question frequently arises, in cases involving an interference with real property, as to whether or not the owner or tenant is entitled to prospective profits as the measure of his damages. It is often contended that the allowance of profits alone adequately measures the loss, and that the difference in the diminution in rent does not make the claimant good for the injury which he has sustained. The rule itself as to the allowance of profits is well understood, but its application in a particular case may be a difficult matter. In many cases profits have been allowed (Bagley v. Smith, 10 N. Y. 489, 61 Am. Dec. 756; Taylor v. Bradley, 39 N. Y. 129, 100 Am. Dec. 415; Schile v. Brokhahus, 80 N. Y. 614; Danolds v. State, 89 N. Y. 36, 42 Am. Rep. 277; Snow v. Pulitzer, 142 N. Y. 263, 36 N. E. 1059; Egan v. Browne, 128 App. Div. 184, 112 N. Y. Supp. 689; Lakeside Paper Co. v. State, 45 App. Div. 113, 60 N. Y. Supp. 1081; Bates v. Holbrook, 89 App. Div. 548, 85 N. Y. Supp. 673); but the general rule is that, subject to certain well-established qualifications, anticipated profits are not recoverable, because such profits are too dependent upon numerous and changing contingencies to constitute a definite and trustworthy measure of damages, because they are ordinarily remote and not the direct and immediate result of the acts complained of and because they were not within the contemplation of the parties affected. Griffin v. Colver, 16 N. Y. 497, 69 Am. Dec. 718; Wehle v. Haviland, 69 N. Y. 448; Witherbee v. Meyer, 155 N. Y. 446, 50 N. E. 58; Reisert v. City of New York, 174 N. Y. 196, 66 N. E. 731; Moravec v. Grell, 78 App. Div. 146, 79 N. Y. Supp. 533; Connolly v. City of New York, 115 App. Div. 81, 100 N. Y. Supp. 673; Nemrow v. Assembly Catering & Supply Co., 121 App. Div. 481, 106 N. Y. Supp. 109; Howard v. Stillwell & Bierce Mfg. Co., 139 U. S. 199, 11 Sup. Ct. 500, 35 L.

Ed. 147; Western Union Telegraph Co. v. Hall, 124 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479; Eckington, etc., R. Co. v. McDevitt, 191 U. S. 103, 24 Sup. Ct. 36, 48 L. Ed. 112.

In determining the damages where the rule applicable is the difference in the rental value of the property, its rental value must be confined to the premises as they existed during the time for which damages are claimed.  In Tallman v. Metropolitan El. R. R. Co., 121 N. Y. 119, 124, 23 N. E. 1134, 8 L. R. A. 173, Judge Earl says:

> "As a basis for estimating damages, the lots must be taken as they are used during the time embraced in the action, and the plaintiff's recovery must be confined to the diminished rental or usable value of the lots just as they were.  He was in no way prevented from putting his lots to any use he wished.  He had the right, acting reasonably, not wantonly or rashly, to put upon them any structures which he deemed most to his advantage; and, at any and all times, until the railway company acquired as against him the right to maintain and operate its road in Fifty-Third street, he had the right to recover the diminished rental value of his lots occasioned to them, just as they were, by the maintenance and operation of the road.  But he could not be permitted to prove or allowed to recover such damages as he might have sustained if he had put his lots to other uses or placed upon them other structures.  Such damages would be purely speculative and contingent."

The same rule is applied in Rumsey v. N. Y. & N. E. R. R. Co., 133 N. Y. 79, 83, 30 N. E. 654, 655, 15 L. R. A. 618, 28 Am. St. Rep. 600, where in the construction of its road the defendant interfered with the plaintiff's right of access to a river.  In that case O'Brien, J., said:

> "The proper measure of damages in such a case is the diminished rental or usable value of the property as it was, in consequence of the loss by defendant's acts of access to the river, in the manner enjoyed by the owner prior to the construction of the embankment across the water front by the defendant.  The plaintiffs cannot be permitted to prove or allowed to recover damages that they might have sustained if they had put the property to some other use or placed other structures upon it.  Tallman v. Met. Elevated Railroad Co., 121 N. Y. 119 [23 N. E. 1134, 8 L. R. A. 173]."

The owner of premises, however, is not barred by any contemplated interference with his property rights from using his property in good faith in any reasonable manner and recovering damages for interference with such improved use.  Corporation v. Mapes, 6 Johns. Ch. 46; Matter of Wall St., 17 Barb. 617; Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543; Matter of Mayor, 24 App. Div. 9, 49 N. Y. Supp. 119; Matter of Munson, 29 Hun, 325; Matter of Mayor, 99 N. Y. 569, 2 N. E. 642; Matter of Dept. Public Works, 53 Hun, 280, 6 N. Y. Supp. 750.

In Storm v. New York El. R. R. Co., 82 Hun, 11, 13, 31 N. Y. Supp. 13, the plaintiff had constructed an apartment house upon his property, after the elevated road had been built, and the court said:

> "The character of the neighborhood, so far as it is affected by the existence and operation of the elevated railroad, affords no bar to an owner from improving his property with the best of structures, and the elevated road must compensate for damages to such structure by its continuing trespasses.  If it desires to prevent the application of this rule it must condemn the right upon which it has seized and which it has appropriated.  Until it does this, an owner cannot be prevented from improving his property as he sees fit, and if such improvements do not make the return they would have done had there

been no elevated road in the avenue or street, the elevated road must compensate for such loss."

In Stowers v. Gilbert, 156 N. Y. 600, 51 N. E. 282, it was held:

"When the remedy invoked for a private trespass upon land, such as the erection of an encroaching wall by one who has no right to condemn the land, is a suit in equity for an injunction and damages, the plaintiff can recover, together with an injunction against future trespass, only his damages up to the entry of judgment; and a recovery on the basis of permanent damages is not permissible."

The rule as to exemplary damages is laid down in Powers v. Manhattan Railroad Company, 120 N. Y. 179, 182, 24 N. E. 295, where the court says:

"To justify an award of exemplary damages the evidence must show on the defendant's part malice, or fraud or gross negligence. The act causing the damages must be wanton or malicious, or gross and outrageous, or there must appear a design to oppress and injure. The purpose of awarding such damages is to punish a wrongdoer and unless a wrong motive exists there is no basis for such award."

It is evident from the foregoing review of cases relating to the measure of damages that there is no general rule that can be formulated that will apply to all cases of injury to a freehold. It cannot be said that the depreciation in the market value of the property affected is the universal rule; for this rule does not apply where the injury is not a permanent one, and loss of rents or some other rule is a more reasonable one to apply. The difference in rental values, on the other hand, cannot be followed, if the injury is slight and the cost of restoration represents a fair measure of the loss. In other cases it may not be the cost of restoration that measures the extent of the loss; for the injury may consist in removing something which does not injure the freehold and has a market value apart from the land, which market value would fairly compensate for its loss. On the other hand, it may not be the market value of the thing injured or destroyed that measures the loss, where the thing injured or destroyed has no market value; but its value on the ground, or as a part of the land itself, may be the true measure of the loss.

The damages cannot be measured in all cases by the same rule, but by the application of one or more of these rules, according to the character and extent of the injury. A measure of damages must be adopted which will make good all the loss, and which, at the same time, will not inflict damages in excess of the actual loss. The damages may be the result of a single act, and may be complete and permanent in their character, in which case the diminution in the market value of the property would be the best measure of the extent of the damages. The removal of large quantities of soil, the destruction of bearing fruit trees, the interference with riparian rights, present familiar cases of permanent injuries to the freehold which cannot be absolutely replaced. Money damages may enable the claimant to restore the soil or procure a substitute for the water removed, but the identical soil, trees, and water cannot be secured; and in this sense the loss is permanent and can best be measured by the difference in the market value of the property affected. Where structures are affixed to the soil, and the injury

to them is so extensive as to make it unreasonable to repair them, they are treated, in estimating the damages to them, as a part of the realty and as permanent in character; and the damages to them are measured by the difference in the market value of the realty of which they form a part.    Trees, except, perhaps, nursery stock, are usually regarded as a part of the realty; and injuries to them are treated as a permanent damage to the realty, and the damage is measured by the difference in the value of the land.    Where a single apple tree in an orchard on a farm, however, is destroyed, the difference in the value of the farm with and without the tree would measure the extent of the loss, although the loss of the tree would practically make no difference in estimating the market value of the farm; but it would be simpler, in such a case, to prove the value of the tree on the ground to the farm under all the attendant conditions.    A shade tree in front of a city lot may have a value as firewood or timber, but its value for that purpose would not represent its value to the owner of the lot, since its loss may very appreciably affect the market value of the lot itself; and, in such a case, the difference in the value of the lot is the better rule, although the same result would probably be arrived at by allowing the witnesses to testify to the value of the tree standing on the property and as a part of it.

There may be an injury to the freehold, however, so slight that the diminution in the value of the property would not be a simple, easy and reasonable rule to apply.    In such a case the cost of restoration is resorted to as the measure of the loss.    As observed by Judge O'Brien, one would not think of estimating the value of a window pane, the destruction of which is an injury to the freehold, by its effect upon the value of the land.    Fences may be torn down, ditches may be filled, small quantities of soil may be removed, and other instances may be cited where the injury can be repaired readily, and where the expense of restoration is a complete and perfect rule to apply.    Some of these acts, technically, may be injuries to the freehold; but, for the purpose of estimating the loss, the cost of restoration is adopted as a simple and complete method for measuring the damages.

The injury may be accompanied by a loss of rents.    The damage may be such that the property for the time is rendered untenantable. Soil may be flooded and made untillable, buildings may be rendered damp and otherwise untenantable; and this damage must be taken into account, together with the cost of restoration, in many cases where the two concur.    There may have been, in some instances, no actual physical interference with the property, or any part of it; but, by reason of noxious odors or other nuisances or causes, the property may have been rendered untenantable.    In such cases the loss of rents, from time to time, until the cessation of the nuisance, would compensate the claimant where he seeks to recover damages.

The market value of the thing removed may be the measure of damages, as in the case of nursery stock cited in one of the cases, or as in the case of full-grown forest trees, where there is no injury to the freehold, or as in the case of the removal of coal which has been given as an instance of the application of the rule that the market val-

ue of the thing removed may be the measure of the damages. Even in such cases, however, there may be an injury to the freehold as well, and then the damages are best measured by the diminution in the value of the property. The removal of building or molding sand, which has a market value, may damage the freehold; and then their market value alone would not compensate the owner for their loss. There may be cases where the market value of the thing removed would represent all the damages sustained; but, where it does not adequately measure the loss, it is not a proper rule to apply. There are cases, however, where the thing injured or destroyed can best be measured by its value on the ground, as in the case of an injury or destruction of a growing crop which, in its condition at the time of the injury, had no market value as a crop. Such a damage is not a permanent one to the freehold, since the freehold itself another season may produce just as much after the injury to the crop as before. What the claimant has lost in such a case is the value of his crop in the condition in which it was at the time of the injury, measured by the difference between its value immediately before and immediately after the damages occur. The damage might, of course, be measured by the difference in the value of the property with the crop before the injury and immediately after the injury; but this rule is cumbersome as compared with an estimate of the value of the crop itself, in the condition in which it was at the time of the injury, and involves practically the same calculations as the estimate of the difference in the value of the property. This value in a sense represents its market value; for it is what would be paid for the crop in its condition at the time of the injury, with the right to use the land for its complete development.

There may be cases that warrant a recovery of both the cost of restoration and the loss of rentals. Where a building has been injured and rentals have been lost thereby, the claimant may recover, not only the cost of making the repairs, where such a course would be a reasonable one to pursue, but also the rentals that he has lost thereby; and, in rare cases, he may recover a diminution in the market value of the property as well. The cases where all three rules of damages are applicable are rare; but, where an injury is so extensive that after the repairs have been made the structures have still suffered a depreciation in value, the rules are applicable, as where, for instance, the injury consists in undermining a new house or other building, so that its foundation breaks and it settles, cracks the walls, and distorts it. No amount of repairs in such a case will place the structure in as good a condition as before the injury. Prior thereto it was a new house, and after the injury, notwithstanding the repairs, it is an old one. This rule would not apply to old structures, which by repairs can be made as good as they were before the injury, nor to such extensive damages as are best measured by the depreciation in the value of the property. Ordinarily depreciation in rentals and diminution in the value of the property cannot both be had, for the diminution in value of the property generally covers all the loss that has been sustained. The damages relate back to the date of the injury, and the interest allowed thereon is supposed to compensate the owner for his loss of rentals.

The preceding discussion is based upon the theory that the injury was the result of a single act, and was complete and not continuous in its nature. A different rule applies in some cases, where the injury is a continuous one and a recovery may be had for all of the damages in one action. Where lands are flooded, for instance, from year to year, or a railroad is operated in a highway without due authority, recoveries may be had from time to time as the injuries occur; but in some cases resort may be had to a suit in equity and the total damage may be secured in one suit. It is apparent that the cases shade into each other, and that it is not an easy matter to lay down a rule for those cases that lie upon the border line. In such cases it is a matter of good judgment as to what rule is the reasonable one to apply and which will adequately measure the damages without subjecting the offender to the payment of any greater compensation than the loss which he actually occasions.

Sometimes an additional element is involved in determining the amount of damages to which one liable for negligence must respond. The question frequently arises as to whether or not the liability attaches for the whole or only a part of the damages, where more than one has been guilty of negligence in connection with the injury. In ordinary cases the rule is well settled that, if several persons are jointly bound to perform a duty, they are jointly and severally liable for omitting to perform, or for performing it negligently; and persons who co-operate in an act directly causing the injury are jointly liable for its consequences if they acted in concert, or united in causing a single injury, even though acting independently of each other. In all these cases the liability is several as well as joint, and each one of the parties in fault can be sued alone and is responsible for the entire damage. Shearman & Redfield, Negligence, § 122. There is a line of cases, however, where this rule cannot be strictly applied, because part of the damages was caused by agencies for which no one can be made to respond. No one can be made to pay for damages which are due to natural causes, as, for instance, where a creek overflows, due to heavy rains, and damages property, while the flood waters are added to through the negligence of some responsible party. In such a case the damages caused by negligence must be separately determined, and cannot be augmented by those resulting from natural causes. If in such a case all the damages would be caused irrespective of the negligence, there is no liability; and, likewise, if any part of the damages would have been occasioned without the negligent acts, there is no liability for such part. In such cases the negligent party must respond for such damages as his negligence occasions and for no more. The determination of the amount of these damages is frequently accompanied with difficulty, but it is none the less one for the courts to determine. It rests upon the peculiar facts in each case, and often depends upon the priority of the flooding due to each cause. Carhart v. State, 11 N. Y. Ct. Cl. 128; Id., 12 N. Y. Ct. Cl. 152; Id., 61 Misc. Rep. 13, 114 N. Y. Supp. 544; Id., 115 App. Div. 1, 100 N. Y. Supp. 499; Crowley v. State, 112 App. Div. 872, 98 N. Y. Supp. 1094; Ostrander v. State, 112 App. Div. 875, 98 N. Y. Supp. 1061; Id., 192 N.

Y. 415, 85 N. E. 668; Acer v. State, 124 App. Div. 915, 108 N. Y. Supp. 1125; Post v. State, 124 App. Div. 916, 108 N. Y. Supp. 1145.

It is apparent from these cases that, in the case at bar, claimant is not entitled to recover the diminution in the market value of his premises in addition to the cost of restoration and the diminished rental value. The damages were not so extensive that they could not be restored. The premises were old, and a thorough repair would put them in as good, if not better, condition than they were before the damages occurred. The claimant is not endeavoring to restrain the state from operating the canal and waste weir in the manner in which it has been doing, but seeks to recover the damages resulting from the negligent acts of the state. Even if he were entitled to recover the diminution in the value of the realty, such recovery must be limited to the damage that occurred during the two years which his claim covers. There have been former recoveries by the claimant for damages growing out of similar acts of negligence by the state, and the only damages for permanent depreciation to which he would be entitled would be those that occurred during the two years preceding the filing of his claim. To give him damages for a longer period would be covering a period for which he has secured damages, and this court cannot award damages beyond the time of the filing of his claim. This is not a case where the claimant seeks to recover in one action all of his damages resulting from the acts of the state. The construction complained of may be changed by the state at any time, and the damages should be limited to the period during which the state continues negligently to operate its canal to claimant's damage.

The claimant, therefore, is entitled to recover the cost of restoring his premises and the loss of rents, if any, down to the time of the filing of his claim, occasioned by the negligent acts of the state, but not, in addition thereto, the diminution in the value of his premises.

Judgment for claimant.